251 N.J. Super. 493 (1991)
598 A.2d 936
MARGARET BURLEY, THOMAS BURLEY, AN INFANT BY HIS GUARDIAN AD LITEM MARGARET BURLEY, PLAINTIFF-APPELLANT,
v.
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT-RESPONDENT, AND MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 1991.
Decided November 21, 1991.
*494 Before Judges KING, GRUCCIO and BROCHIN.
John C. Burley, attorney for appellant.
Shanley and Fisher, attorneys for respondent (Charles A. Reid, III and Kathleen B. Harden, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal from a dismissal of an action at law for money damages by a State of New Jersey employee against the Prudential Insurance Company (Prudential).[1] Prudential is the administrator of the State Health Benefits Program established to provide health benefits for State employees by N.J.S.A. *495 52:14-17.25 to -17.45; L. 1961, c. 49; see also N.J.A.C. 17:9-1.1 to -7.4. Judge Stein granted summary judgment in the Law Division in favor of the defendant Prudential on the ground that plaintiff had failed to exhaust her administrative remedies by appealing the denial of her claims to the State Health Benefits Commission (SHBC), the State agency charged with the operation of the program under the aegis of the Treasury Department. See N.J.S.A. 52:14-17.27. We affirm the order of January 25, 1991 dismissing the complaint for damages but modify it: (1) to transfer the matter under R. 1:13-4(b) to the SHBC for an administrative hearing, and (2) to provide that the dismissal is without prejudice on the merits as to any potential action at law by plaintiff against either Prudential or the SHBC.
The suit was brought in the Law Division against Prudential by plaintiff Margaret Burley, a State employee, on behalf of herself and her infant son, Thomas Burley. As part of her benefits package, she receives health insurance under the State Health Benefits Program, specifically the "Traditional Plan." This Plan includes a Blue Cross/Blue Shield component which is not involved in this case.
The State Health Benefits Program is, in effect, the State of New Jersey acting as a self-insurer. Prudential administers the Program and makes payments on claims on behalf of the State. The claims must, however, be authorized by the SHBC, the agency created by N.J.S.A. 52:14-17.27 to operate the Program. In short, the money comes from the State but Prudential runs the claims aspects of the Program.
The SHBC consists of the Commissioner of the Department of Insurance, the President of the Civil Service Commission (now presumably the Commissioner of Personnel of the Merits System Board, N.J.S.A. 11A:2-8 to 11A:2-11), and the State Treasurer. N.J.S.A. 52:14-17.27. The SHBC retains all final authority and financial responsibility for the Plan under its contract with Prudential. Indeed, in their contract the SHBC *496 has agreed to hold Prudential harmless from any claims, lawsuits, settlements, judgments, costs, penalties and expenses arising out of the administration of the Program except where it has acted in a criminal or fraudulent manner.
Plaintiff Margaret Burley submitted a claim for services performed on August 10, 1989 by Dr. Tager. The procedure was apparently complicated, described as a total left thyroidectomy and isthmusectomy. Plaintiff submitted her doctor's bill to Prudential for the surgery performed by Dr. Tager after Blue Cross/Blue Shield paid their basic $473. Prudential paid only $3,327 and refused to pay the balance of $1,045 because that amount was "determined to be above the range of reasonable and customary fees for this service in your provider's area." Dr. Tager had advised Prudential that his charge for the four-hour operation was "not excessive for this large and difficult procedure and certainly falls within the normal fees within the Northern Bergen County area."
The second claim brought by plaintiff Margaret Burley was on behalf of her son, Thomas, who required a tonsillectomy. Forewarned by her prior disappointment, Margaret Burley wrote to Prudential on March 7, 1990 seeking a predetermination of the "customary fee" for this type of surgery allowed by Prudential so she could shop for a surgeon to operate on him. In a reply dated March 30, 1990 Prudential refused to supply such a proposed fee, presumably because this would constitute bidding against itself. Prudential replied: "In order to inform you if the provider's charge is a customary fee, we must be furnished with the provider's name and address along with the fee amount."
Margaret Burley then sued Prudential for the $1,045 which she presently owes her surgeon, Dr. Tager; for $5,000 general damages for pain and suffering for her son, and $5,000 for her derivative damages on her son's claim plus attorney's fees. She claimed in her complaint that on February 17, 1990 she "was informed by Dr. Harry Haiges that her son, Thomas *497 Burley, should undergo surgery for the removal of his tonsils." She claimed that Thomas experiences "an adverse reaction when on antibiotics, which symptoms include the inability to sleep, loss of appetite and general extreme hyperactivity." She asserted that these continuing problems were caused by Prudential's "bad faith refusal to provide his parents with the necessary and accessible information so that they could arrange for his surgery."
Prudential's letter of explanation to the Department of Insurance gives the rationale for turning down the balance of Dr. Tager's fee. We quote that explanation in full:
The Major Medical Plan excludes the following:
Charge in Excess of Customary Charge: The part of any charge for a service or supply which exceeds the customary charge. The customary charge for a service or supply is the smaller of (a) or (b):
(a) The usual charge made by the provider when there is no insurance.
(b) The general level of charges made by others in the area for a like service or supply. The term "area" means a county or larger area as is needed to obtain a representative level of charges.
Prudential determines a customary charge through the use of a statistical profile of physicians' charges developed for this purpose. The profile is updated annually and derived from fee data received for benefit determination purposes from doctors across the country. The data is divided into 253 population areas based on demographic and economic characteristics to reflect the different costs of doing business in various parts of the country.
Among other pertinent data, the profile reflects for each surgical procedure within each of the areas the dollar value of the charge representing the 80th percentile. This charge is the one which is at least as great as 80% of all charges recorded in that area for a given procedure.
In the absence of sufficient charge data to perform a 80th percentile calculation (less than 10 charges in an area for a procedure), our profile system automatically calculates an alternate prevailing fee screening amount called an Area Conversion Factor. This factor is derived by taking into account the charges for all procedures in each area and is then applied to a unit weight that reflects the relative complexity of that procedure to all other procedures.
The profile did not contain ten or more fees for the type of thyroid surgery performed by Dr. Tager. Therefore, a customary charge in the Westwood, New Jersey area was determined utilizing our profile's Area Conversion Factor. The factor was based upon more than 13,000 fees in that general area. The Operative Report and Surgical Pathology Report were reviewed by our physician consultant for opinion regarding surgical procedure classification. Dr. Tager's fee for surgery was $4,000.00. A customary fee for this service was *498 determined to be $3,165.00. Dr. Boyer's fee for surgical assistance was $800.00. A customary fee for this service was determined to be $635.00.
As to the refusal to provide a quote for young Thomas' tonsillectomy, Prudential's brief expresses the rationale for this position. Prudential claims that "plaintiffs are seeking to require [it] to provide them with a maximum allowable fee for a tonsillectomy without providing Prudential with additional requested information such as the name of the provider." Prudential asserts that:
To require Prudential to release the amount of maximum fees covered under the plan before plaintiffs even consult a physician would serve no purpose except to provide physicians with the opportunity to raise their fees consistent with the maximum amount allowed under the plan. Plaintiffs consistently refused to provide Prudential with the name of the Provider. Thus, Prudential was prevented from contacting the provider to ascertain his standard fee for a tonsillectomy and thereafter make a determination as to whether such fee was within the range of reasonable and customary fees for such a procedure. Moreover, the reformation which plaintiffs apparently seek would be in direct contradiction to the Commissions' stated goal of attempting to reduce unreasonable fees.
Prudential contends that relief from any dissatisfaction with the way the Benefits Program is administered must be obtained from the SHBC directly. Prudential contends that it is simply running the program as directly by the SHBC.
We conclude that plaintiff must first seek recourse by administrative appeal to the SHBC. Both sound principles of administrative law and the relevant contract provisions require the plaintiff to seek administrative relief before attempting to sue for damages. All available and appropriate administrative remedies generally should be fully explored "before judicial action is sanctioned." Abbott v. Burke, 100 N.J. 269, 296, 495 A.2d 376 (1985). The "exhaustion" principle ensures that claims will be heard as a preliminary matter by a body with expertise, a factual record may be created for appellate review, and there is a chance that the agency decision may satisfy the parties and keep them out of court. Atlantic City v. Laezza, 80 N.J. 255, 265, 403 A.2d 465 (1979).
*499 The Program's "Information Handbook" contains this instruction concerning appeals:
The administrative contracts between the commission and the insurance companies require the companies to pay benefits according to their schedule of reasonable and customary fees and to administer the plan in accordance with the schedule of benefits determined by the commission. Employees who wish to appeal the determination of either carrier (Blue Cross and Blue Shield and Prudential), should appeal to the State Health Benefits Commission at:
New Jersey Division of Pensions
State Health Benefits Commission
CN 299
Trenton, New Jersey XXXXX-XXXX
The handbook also states in a later section titled "General Conditions of the Plan":
 You have the right to appeal Prudential's final decision to the State Health Benefits Commission but it is your responsibility to demonstrate that the particular treatment falls within the general conditions of the plan.
The regulations governing the SHBC contain only one specific reference to the subject of appeals. N.J.A.C. 17:9-1.3 refers to the right to appeal from an adverse decision by the SHBC. It states:
The following statement shall be incorporated in every written notice setting forth the Commission's determination in a matter where such determination is contrary to the claim made by the claimant or his legal representative:
"If you disagree with the determination of the Commission in this matter, you may appeal by sending a written statement to the Commission within 45 days from the date of this letter, informing the Commission of your disagreement and all of the reasons therefor. If no such written statement is received within the 45 day period, this determination shall be considered final." [N.J.A.C. 17:9-1.3.]
We understand that the SHBC usually provides for an initial informal hearing on appeals to it. The regulations contain no mention of whether an adjudicatory, "contested case" hearing before an administrative law judge under the auspices of the Office of Administrative Law may sometimes be held, if at all. See N.J.S.A. 52:14B-2(b); N.J.A.C. 1:1-2.1; S. Lefelt N.J.Practice, Administrative Law and Practice § 119, at 194 (1988). No time limits on appeals to the SHBC are articulated in either the "Information Handbook," the regulations or anywhere else.
*500 Plaintiff claims a right to sue for damages at law because of an ambiguity created by the conflicting sections of the "Information Handbook." Plaintiff relies on this clause in the handbook:
Legal Action
No action at law or in equity will be brought to recover on the group contract until 60 days after the written proof described above is furnished. No such action will be brought more than three years after the end of the time within which proof of loss is required.
Plaintiff claims that this seeming ambiguity must be construed in her favor, permitting her to sue at law. We disagree. The clause smacks of insurance contract boiler-plate, no doubt inserted out of habit, which at best would have secondary impact in this context where the State is a self-insurer and Prudential is only a servicing agency. Where two clauses in a contract clearly conflict, the more specific provision  here the one describing the appeal to the SHBC  usually controls over the more general. 2E. Farnsworth on Contracts, § 7.11, at 263-264 (1990); see George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 35, 109 A.2d 805 (1954).
We reject plaintiff's final contention, that she cannot receive an unbiased hearing from the SHBC, as clearly without merit. R. 2:11-3(e)(1)(D). See Matter of Carberry, 114 N.J. 574, 586, 556 A.2d 314 (1989); In re Uniform Administrative Procedural Rules, 90 N.J. 85, 93-94, 447 A.2d 151 (1982).
We transfer the matter to the SHBC for a hearing on the merits of plaintiff's claim under the Plan. See R. 1:13-4(b). See authorities collected in S. Pressler, Current N.J. Court Rules, R. 1:13-4(b) Comment (1991). Our action, is of course, without prejudice to any claim plaintiff may ultimately wish to assert administratively or at law against either Prudential or the SHBC.
As modified, we affirm the disposition in the Law Division.
NOTES
[1] The claim against her husband's employer's carrier, the co-defendant Massachusetts Mutual Life Insurance Company, was voluntarily dismissed by plaintiff and is not involved in this appeal.