NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1712
_____

MICHELLE ROCHE,
INDIVIDUALLY AND AS CLASS REPRESENTATIVE,

Appellant

v.

AETNA, INC.; AETNA HEALTH, INC., A NJ CORP;
AETNA HEALTH INSURANCE CO;
AETNA LIFE INSURANCE, CO; RAWLINGS, CO
_____


On Appeal from the United States District Court
for the District of New Jersey
District Court No. 1-13-cv-03933
District Judge: The Honorable Noel L. Hillman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 6, 2017

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*

(Filed: March 9, 2017)
_____

OPINION*
_____


SMITH, *Chief Judge.*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Aetna Life Insurance Company ("Aetna"), a health care plan administrator, took the position that Michelle Roche, a plan member, had to reimburse it for medical expenses it paid on behalf of Roche under the relevant benefits plan. Roche reimbursed Aetna but then filed this action, contending that she should not have had to reimburse Aetna. The District Court concluded that, before filing this action, Roche needed to exhaust her administrative remedies. On appeal, Roche argues that she was not required to exhaust those remedies. Because the plan unambiguously requires Roche to exhaust her remedies, we will affirm the judgment of the District Court.

I

Roche is a member of two health care benefit plans: an employee-group health plan sponsored by Bank of America ("the Bank of America Plan") and a governmental health plan funded by the State of New Jersey ("the State Plan"), collectively (the "Plans"). The administrator of both Plans is Aetna.[1] The Rawlings Company ("Rawlings") is Aetna's reimbursement claims vendor.

On January 19, 2007, Roche was injured in a car accident in Pennsylvania. Between 2008 and 2010, the Plans provided Roche with $88,075.29 to cover medical expenses for her accident-related injuries. She received $1,473.57 from

---

[1] Roche also sued Aetna Inc., Aetna Health Inc., and Aetna Health Insurance Co.

the Bank of America Plan and $86,601.72 from the State Plan. From 2010 to 2012, Rawlings sent Roche, through her personal injury attorney, notices informing Roche of her purported obligations under the Plans' terms regarding Aetna's right to recover the medical expenses it paid on Roche's behalf in the event she received a settlement. Roche eventually recovered money via settlement from the tortfeasor involved in the car accident. On January 4, 2013, Roche's personal injury attorney sent Rawlings a check for $88,075.29 as reimbursement for the amounts paid by the Plans for Roche's accident-related injuries.

II

On May 28, 2013, Roche commenced the present case in New Jersey state court. Then, on June 25, 2013, Defendants removed the case from New Jersey state court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). On August 1, 2013, Defendants filed a motion for summary judgment under Rule 56 or, in the alternative, to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In 2014, the District Court ordered limited jurisdictional discovery and dismissed Defendants' motion without prejudice to refiling post-discovery. Following jurisdictional discovery, Defendants renewed their motion.

3

On February 29, 2016, the District Court granted the Defendants' motion for summary judgment and dismissed the action without prejudice. *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180, 190 (D.N.J. 2016). The District Court reasoned that Roche had failed to exhaust her administrative remedies and that exhaustion was not futile. *Id.* at 185–90. Roche then timely appealed.

III[2]

We review grants of summary judgment de novo. *See Cat Internet Servs., Inc. v. Providence Wash. Ins. Co.*, 333 F.3d 138, 141 (3d Cir. 2003) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 566 n.3 (3d Cir. 2002)). "Summary judgment was proper if, viewing the record in the light most favorable to [Roche], there is no genuine issue of material fact and [Defendants] are entitled to judgment as a matter of law." *Id.* We exercise de novo review when examining the applicability of exhaustion principles to a plaintiff's claim but review a decision as to the futility of exhaustion for an abuse of discretion. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002).

---

[2] The District Court had jurisdiction under CAFA, 28 U.S.C. § 1332(d), and supplemental jurisdiction over Roche's individual claims under 28 U.S.C. § 1367. This Court has jurisdiction under 28 U.S.C. § 1291 because, although the District Court dismissed the action without prejudice, Roche stood on her complaint by not attempting to avail herself of the administrative process. *See Ghana v. Holland*, 226 F.3d 175, 180 (3d Cir. 2000).

IV

This case focuses solely on the State Plan because Roche only brought claims under "non-ERISA governmental health insurance policies" and the Bank of America Plan is an ERISA-governed plan.[3]  A152–58.  Roche conceded as much in the District Court.  *See Roche v. Aetna, Inc.*, 13-cv-03933, Doc. 35 at *5 n.2 (D.N.J. September 20, 2013) ("Plaintiff is only seeking damages arising from Defendants' subrogation lien and/or reimbursement demand for benefits paid under the State Plan.").  We conclude that the State Plan required Roche to exhaust her remedies before filing in court.

A

ERISA exempts the State Plan from its coverage.  Specifically, 29 U.S.C. § 1003(b)(1) exempts from coverage those employee benefit plans that are "governmental plan[s]."  ERISA defines "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).  The State Plan is a plan established by the State of New Jersey, specifically through the State Health Benefits Commission ("the Commission"), and it is therefore exempt

---

[3] "ERISA" is an acronym for the Employee Retirement Income Security Act of 1974.

from ERISA's requirements.  A240–52; *see also* N.J. Stat. Ann. § 52:14-17.25 *et seq*.

The State Plan "is, in effect, the State of New Jersey acting as a self-insurer." *Burley v. Prudential Ins. Co. of Am.*, 598 A.2d 936, 937 (N.J. Super. Ct. App. Div. 1991).  Aetna administers the State Plan and "makes payments on claims on behalf of the State."  *Id.*; *see also Neuner v. Horizon Blue Cross Blue Shield of New Jersey* (*In re Lymecare, Inc.*), 301 B.R. 662, 674 (Bankr. D.N.J. Nov. 5, 2003) (observing that the State Plan "is administer[ed by] the [Commission] through contracts with several insurers . . . , under which the insurer provides the administrative services necessary to effectuate actual delivery of health care benefits and the payment of claims for benefits").  "The claims must, however, be authorized by" the Commission.  *Burley*, 598 A.2d at 937.  The Commission also has the power to develop rules and regulations regarding the State Plan.  N.J. Stat. Ann. § 52:14-17.27.  Those regulations are found in New Jersey Administrative Code § 17:9-1.1 *et seq*.

The regulations governing the State Plan specifically address claim exhaustion.  In relevant part, the regulations state, "Any member of the [State Plan] who disagrees with the decision of the carrier and has exhausted all appeals within the plan . . . may request that the matter be considered by the Commission."

6

N.J. Admin. Code § 17:9-1.3(a). The regulations go on to describe how the Commission will handle appeals. *Id.* The regulations thus contemplate administrative appeals within the State Plan followed by appeals to the Commission prior to filing in court.

B

The State Plan also describes its process for appealing decisions made by Aetna as the plan administrator. First, the State Plan describes appealable decisions by Aetna as "adverse benefit determinations." A247. "Adverse benefit determinations are decisions Aetna makes that result in denial, reduction, or termination of a benefit or the amount paid for it." *Id.* The State Plan also lists typical reasons for an adverse benefit determination. *Id.* Those reasons include, but are not limited to, ineligibility or lack of coverage under the State Plan. *Id.*

The State Plan further outlines the procedures following an adverse benefit determination:

> Aetna will send [the plan member] written notice of an adverse benefit determination. The notice will give the reason for the decision and will explain what steps [the plan member] must take if [he or she] wish[es] to appeal. The notice will also tell [the plan member] about [his or her] rights to receive additional information that may be relevant to the appeal. Requests for appeal must be made in writing within 180 days from the receipt of the notice.

*Id.* Following Aetna's notice, the State Plan "provides for two levels of appeal, plus an option to seek external review of the adverse benefit determination" by the Commission. *Id.* The Plan member "must complete the two levels of appeal before bringing a lawsuit against the plan." *Id.*

In addition to outlining its appeals procedures, the State Plan provides Aetna with the discretion to exercise a "right of recovery." A250. This right gives Aetna, as plan administrator, the authority "to recover from, and be reimbursed by, [a plan member] for all amounts th[e] Plan has paid" should a plan member, like Roche, "receive[] any payment from any [responsible tortfeasor] . . . as a result of an injury." A251. To protect that right of recovery, the State Plan also provides for a right to "automatically" place a lien on any settlement related to an injury for which the State Plan paid benefits. *Id.*

C

Given the above regulations and plan terms, the State Plan required Roche to exhaust her administrative remedies when Aetna made its adverse benefit determination. Under the State Plan, adverse benefit determinations are certain decisions by Aetna requiring exhaustion of an appeals process prior to filing a lawsuit. As described earlier, an adverse benefit determination is one "that result[s] in denial, reduction, or termination of a benefit or the amount paid for it."

8

A247; *see also* N.J. Admin. Code § 17:9-1.3(a) ("Any member of the [State Plan] who disagrees with the decision of the carrier and has exhausted all appeals within the plan . . . may request that the matter be considered by the Commission.").

Here, Aetna provided Roche with approximately $88,000 to cover her medical expenses following an accident. Roche then reached a settlement entitling her to compensation for her accident-related injuries. Exercising its right of recovery under the State Plan, Aetna decided to request reimbursement for the amount paid to cover Roche's medical expenses after her receipt of settlement proceeds. That decision by Aetna is unquestionably one that results in the "reduction . . . of a benefit [to Roche] or the amount paid for it [by the State Plan]." A247; *see also M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002) ("Generally, the terms of an agreement are to be given their plain and ordinary meaning."); *Burley*, 598 A.2d at 940 (applying New Jersey contract law to state benefits plan). Therefore, because Roche has yet to exhaust her administrative remedies as was required by the State Plan's terms, she must do so before returning to court.

Bolstering this conclusion are several of our cases interpreting when a claim is for "benefits due" under ERISA plans. 29 U.S.C. § 1132(a)(1)(B). A civil action under ERISA may be brought when a claim seeks "to recover benefits" due

to the plan member under the terms of the relevant plan. *Id.* In *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005), we held that claims by ERISA plan members to regain certain benefits after reimbursing their plan for those benefits were claims for "benefits due" under ERISA. *Id.* at 161–63. Following the Fourth and Fifth Circuits, we reasoned that such claims were contesting a decision denying benefits under the ERISA plan and therefore akin to challenges to decisions administering benefits. *Id.* at 163; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (en banc) ("As it stands, [the plan member's] benefits are under something of a cloud, for [the plan] is asserting a right to be reimbursed for the benefits it has paid for his account."); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 291 (4th Cir. 2003) ("[The plan member's] claim to recover the portion of her benefit that was diminished by her payment to Prudential under the unlawful subrogation term of the plan is no less a claim for recovery of a plan benefit under § 502(a) than if she were seeking recovery of a plan benefit that was denied in the first instance."). As a result, in *Levine*, we concluded, "[The plan members'] claim [was] for benefits due. [They] have already paid back a portion of their benefits. Thus, they claim essentially that they are entitled to have certain health insurance claims paid under their ERISA plans." *Levine*, 402 F.3d at 163.

We reaffirmed *Levine*'s reasoning in *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305 (3d Cir. 2006). The plan member in *Wirth* argued that his claim to recover money paid to reimburse a plan administrator was not a claim for benefits under the plan. *Id.* at 308. Citing *Levine*, we held that the plan member was actually seeking "benefits due" to him. *Id.* at 309 (citing *Levine*, 402 F.3d at 163). In sum, we stated:

> Here, as in *Levine*, the actions undertaken by the insurer resulted in diminished benefits provided to the [plan members]. That the bills and coins used to extinguish Aetna's lien are not literally the same as those used to satisfy its obligation to cover [the plan member's] injuries is of no import—"the benefits are under something of a cloud."

*Id.* (quoting *Arana*, 338 F.3d at 438).

While these cases address language from ERISA and not from New Jersey law, they are persuasive because of similarities between ERISA and the State Plan's terms. ERISA, like the State Plan at issue here, requires administrative exhaustion of claims following an "adverse benefits determination." 29 C.F.R. § 2560.503-1; *see also Harrow*, 279 F.3d at 252 ("We apply the exhaustion requirement to ERISA benefit claims . . . ."); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . , a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."). Also like the State Plan, ERISA regulations define an adverse

11

benefit determination as "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4)(i). Therefore, as an ERISA plan member's attempt to regain money that the member reimbursed to a plan must be administratively exhausted under ERISA, a functionally identical claim under the State Plan must also be administratively exhausted before the State Plan member files in court.

Given the plain terms of the State Plan requiring exhaustion, New Jersey regulations requiring exhaustion, and analogous ERISA case law supporting our reading of the State Plan, we conclude that Roche needed to have exhausted her administrative remedies before filing in court.

D

Roche presents several arguments attempting to explain why she did not need to exhaust her administrative remedies. Each argument is unpersuasive.[4]

Roche first argues that *Levine* and *Wirth* are "inapplicable" here because those cases are ERISA cases. Blue Br. 13–14. In doing so, she fails to identify any meaningful distinction between the claims and plans in those cases and her own. Focusing on the text of the State Plan, Roche also contends that (1) reimbursement occurs "after the 'coverage' issue has already been resolved and, as

---

[4] Because we conclude that Roche needed to exhaust her administrative remedies, we do not address Aetna's alternative arguments for dismissal.

such, [reimbursement] cannot effect [sic] the extent, nature or provision of insurance"; (2) the State Plan's "separate" right of recovery section "does not provide for administrative review" and so no exhaustion was required; and (3) the placement of an automatic lien on settlements demonstrates that the State Plan "did not intend for appeals" of Aetna's decisions to seek reimbursement. Blue Br. 16–17. Simply put, those arguments are not supported by the text of the State Plan and do nothing to undercut the State Plan's plain language that a decision by Aetna requires exhaustion when it "result[s] in denial, reduction, or termination of a benefit or the amount paid for it." A247.

Roche further observes that Aetna failed to comprehensively follow the State Plan's terms by not providing notice of appeal procedures. Blue Br. 18. She argues that a particular ERISA regulation extinguishing exhaustion requirements in the absence of notice should apply to the State Plan. Gray Br. 2–3 (citing 45 C.F.R. § 147.136). While Roche may be correct that Aetna gave no notice of the State Plan's appeal procedures, she fails to explain why we should apply an ERISA regulation to the State Plan and why that ERISA regulation would apply given that the State Plan payments here occurred between 2008 and 2010 but the regulation covered, at the earliest, plan years "on or after September 23, 2010." Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating

13

to Internal Claims and Appeals and External Review Processes under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 43,330, 43,364 (July 23, 2010). Although we earlier analogized to our case law interpreting ERISA, a similar analogy is unpersuasive here for a simple reason: neither the State Plan nor New Jersey law contains the language found in the ERISA regulation Roche cites or includes other language extinguishing the exhaustion requirement in the absence of notice. *See* A247; N.J. Admin. Code § 17:9-1.3. Finally, Roche was in possession of the appeal procedures and offers no reason for why she could not have appealed other than her mistaken belief that no adverse benefit determination had been made. Thus, given the lack of any State Plan term or New Jersey regulation waiving exhaustion and Roche's possession of the appeal procedures, the initial lack of notice of those procedures did not extinguish the State Plan's exhaustion requirement.

Roche also offers a series of five arguments that broadly challenge the application of an exhaustion requirement to her claims. First, she contends that exhaustion "was intended to provide an appeal mechanism whereby medical professionals could evaluate" benefits determinations. Blue Br. 19. Roche offers nothing to support her assertion that review by medical professionals is the *only* purpose of exhaustion. She also provides no explanation for why that general

14

purpose for exhaustion requires us to ignore the plain terms of the State Plan and New Jersey regulations requiring exhaustion. *See M.J. Paquet*, 794 A.2d at 152. Second, she argues that claims of "across-the-board" errors were not meant to be exhausted. Blue Br. 20. This argument is unpersuasive because Roche points to no "across-the-board" policy by Aetna in deciding to exercise its right to recovery. Third, she states that, even if ERISA applies, we should not require exhaustion "as [a] matter[] of the Court's inherent adjudicatory power and of the policy underlying exhaustion." Blue Br. 23. Roche again provides no support for that conclusion. Fourth, according to Roche, exhaustion does not apply to questions of law and the issues presented here involve "only a question of law." Blue Br. 23–24 (citing cases). This argument fails to account for the State Plan's terms. This case squarely involves Aetna's decision to seek reimbursement, which is one that resulted in the "reduction . . . of a benefit [to Roche] or the amount paid for it [by the State Plan]" and one that required exhaustion under the State Plan. A247. Neither Roche's brief nor the cases she cites provides support for the proposition that we should ignore the State Plan's plain terms and New Jersey regulations because this case may also involve questions of law. *Cf. Harrow*, 279 F.3d at 253–54. Doing so would likely undermine the exhaustion requirement under the State Plan as many adverse benefit determinations are likely related to questions of

15

law.  Finally, Roche observes, without support, that claims for breach of fiduciary duty under ERISA need not be exhausted, and so, presumably, her claims for breach of fiduciary duty under New Jersey law need not be either.  Blue Br. 24–25.  Even assuming that Roche's analogy between ERISA and New Jersey law is accurate, Roche may not restyle her challenge to Aetna's benefits determination as a fiduciary claim to avoid exhaustion under the State Plan.  *See Harrow*, 279 F.3d at 253 ("Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."); *see also Beaver v. Magellan Health Servs., Inc.*, 80 A.3d 1160, 1167–68 (N.J. Super. Ct. App. Div. 2013) (rejecting inclusion of breach of fiduciary duty claims in complaint to avoid jurisdiction in New Jersey Superior Court and noting "Plaintiff cannot avoid [jurisdiction] by cloaking his claims under the mantle of contract and tort").

Roche last insists that the District Court abused its discretion in concluding that exhaustion would not be futile here.  We have held that "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so."  *Harrow*, 279 F.3d at 249.  Although New Jersey courts appear to recognize this exception to administrative exhaustion as well, s*ee L.W. v. Egg Harbor Twp. Bd. of Educ.*, No. A-0928-12T1, 2015 WL 1013164, at *4 (N.J. Super. Ct. App. Div. Mar. 10, 2015) (citing *Harrow*, 279 F.3d at 250), it is unclear

16

whether the futility exception would apply in light of clear language mandating exhaustion in both the State Plan and the New Jersey regulation. Even assuming the futility exception applies here, the District Court did not abuse its discretion in concluding that Roche failed to demonstrate the futility of exhaustion.

To determine whether exhaustion would be futile, we consider a non-exclusive list of factors:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow*, 279 F.3d at 250. Roche has the burden of establishing futility. *See D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002) ("A party invoking this exception must provide a clear and positive showing of futility before the District Court." (citing *Harrow*, 279 F.3d at 249–50)); *L.W.*, 2015 WL 1013164, at *4. The only factor weighing in Roche's favor is Aetna's lack of compliance with its procedures when it failed to provide Roche with notice of the State Plan's appeal procedures. The District Court reasonably determined that Aetna's failure to do so does not overcome the other relevant factors, which all weigh in Aetna's favor. Roche has not attempted to pursue administrative relief. Instead, she sought judicial relief having made no meaningful attempt to respond to Rawlings' letters

17

asserting Aetna's right to recovery under the State Plan. As noted earlier, she provides no evidence of a fixed Aetna policy denying reimbursement claims. She similarly offers no testimony from an Aetna official regarding the futility of an appeal. In sum, no abuse of discretion occurred here because Roche has not demonstrated that exhaustion would be futile.[5]

V

For the reasons stated above, we will affirm the District Court's grant of summary judgment and dismissal of Roche's complaint without prejudice.

---

[5] In passing, Roche argues the District Court erred in denying her request for discovery. Blue Br. 29–30 (citing *Roche v. Aetna Inc.*, 13-cv-3933, Doc. 35-3 (D.N.J. September 20, 2013)). We review the District Court's decision for abuse of discretion, *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015), and conclude that no abuse of discretion occurred. In the District Court, Roche failed to identify with specificity what "particular information" she sought and, more importantly, "how, if disclosed, it would [have] preclude[d] summary judgment." *Id.* at 568.