**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3518-17T4

DAVID A. FORMAN,

     Plaintiff-Respondent,

v.

AMY LEVENSON,

     Defendant-Appellant.

Submitted December 9, 2019 – Decided January 22, 2020

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1773-10.

Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione and Liz C. Kramer, of the Minnesota bar, admitted pro hac vice, of counsel and on the briefs).

Laufer, Dalena, Jensen & Bradley, LLC, attorneys for respondent (Terryann K. Bradley and Alyssa Marie Clemente, on the briefs).

PER CURIAM

In this matrimonial case, defendant appeals from a March 23, 2018 order denying her motion to vacate an arbitrator's award.[1]  Although plaintiff cross-appealed from the same order, which denied his motion for counsel fees, he has waived his cross-appeal for failure to make any argument regarding counsel fees.[2]  Defendant primarily argues the arbitration agreement was invalid, the Arbitrator exceeded the scope of his powers, and plaintiff engaged in fraud.  We disagree and affirm.

I.

In 2011, the parties divorced and entered into a marital settlement agreement (MSA).  Three years later, they returned to court on motions related

---

[1]  On today's date, we released our opinion in Forman v. Levenson (Forman II), No. A-0238-18 (App. Div. Jan. 22, 2019) (slip op. at 1).  In that action, defendant appealed from paragraphs one and three of an August 31, 2018 order partially denying reconsideration of a June 12, 2013 order pertaining to child support, and a September 18, 2018 order, which amended defendant's child support obligation.  A different judge entered those orders and rendered a written statement of reasons.

[2]  See, e.g., Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (stating "[a]n issue not briefed on appeal is deemed waived"); 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (indicating appeal of trial court decisions identified in notice of cross-appeal but not briefed deemed abandoned).  Accord N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (finding that party waived issue on appeal that it raised "[i]n a single sentence in its brief," without any legal argument).

2

to the MSA, and in September 2014, they entered into a consent order (September 2014 CO), agreeing to retain a retired judge who would serve as a mediator on a reimbursement issue, then as a binding arbitrator on that issue if necessary. They also agreed that other issues (including payment of ongoing expenses into a trust, parenting time, and imputation of income) would be determined by the court if they could not reach an agreement. The parties selected Judge Michael K. Diamond, a retired judge (the Arbitrator).

In April 2015, after having resolved a number of financial issues, the parties entered into another consent order (April 2015 CO), agreeing to binding arbitration on child support "to be paid from plaintiff to defendant," and the children's cell phone expenses. The April 2015 CO provided that any future disputes "as to payment of the children's expenses on a going forward basis" would be submitted "on an annual basis to [the Arbitrator], or his successor . . . , for a determination of reimbursement from one party to the other[,] and . . . an appropriate sanction for non-payment at his discretion."

In December 2016, the Arbitrator entered an order regarding child support, expenses, and credits (December 2016 order). It stated "[t]he scope of Arbitration in this matter shall be limited to . . . any credits due by . . . plaintiff or defendant to the other for expenses incurred as outlined" in the specific sub-

paragraphs of the MSA concerning use of the children's 529 plans and to the allocation of costs for the children's health insurance and health care, extracurricular activities, summer camp, and education.  Later that month, after fully discussing the matter with counsel, the parties entered into another consent order (2016 arbitration agreement), which stated:

> By executing this [2016 arbitration agreement], the parties also acknowledge that they have read same before executing it, that they have discussed all terms with counsel, and that they have given independent reflection and judgment to the terms and provisions of this Order before executing it and agree to be bound by same.

The 2016 arbitration agreement noted that it "shall constitute a waiver by the parties of the right to trial or review by the [c]ourt, except as specifically provided herein of N.J.S.A. 2A:23-B, et. seq. or by the terms[,]" and that the waiver was voluntary and "done without coercion or duress."  The 2016 arbitration agreement provided:

> All issues that could have been raised and adjudicated by the [c]ourt in the New Jersey Superior Court, Family Part – both interim and final – shall be subject to the jurisdiction of and determination by the [A]rbitrator pursuant to the terms and procedures of this Order.  The [A]rbitrator shall determine whether an issue or dispute is within the scope of his jurisdiction.

The 2016 arbitration agreement added the following handwritten provision:

4

The parties recognize that the attempt at mediation of rema[in]ing issues was unsuccessful [and] therefore, they have agreed to proceed by way of arbitration of the issues to be resolved.

A. If the parties want a stenographer at the hearing, the cost of same shall be shared equally.

B. See [December 2016 order] as to the scope of the hearing.

The parties also agreed that "[n]othing in [the 2016 arbitration agreement] shall prevent the Arbitrator, with the written consent of the parties to arbitration, from mediating an issue or issues submitted, and such agreed-upon mediation shall not disqualify the Arbitrator from arbitrating the issue(s) should mediation not be successful." It further stated that "[t]he parties agree to be bound by the final decision of the Arbitrator, both as to Findings of facts and Conclusions of Law."

In early May 2017, the Arbitrator noted that he and the parties "had sort of a mediation all day long, trying to resolve certain issues," but they "were unable to do that," so they proceeded with arbitration. Two months later, the Arbitrator ordered plaintiff to pay defendant "for reimbursement of the children's expenses[,] the sum of $8529.26 in settlement of all of the claimed expenses by each party." In August 2017, he held that the parties' dispute regarding $1,249,500 in settlement monies paid to defendant by her former

5

employer (the Barclays settlement) was within the scope of arbitration. In November 2017, he entered judgment on that dispute in plaintiff's favor (November 2017 order). In February 2018, the Arbitrator issued a decision (February 2018 decision), denying defendant's request to modify the terms of the MSA regarding parenting time and financial issues and awarding plaintiff $15,000 in legal fees.

Defendant filed a motion with the judge to vacate the November 2017 order, and other arbitration awards, which plaintiff moved to confirm. The judge held a hearing on March 23, 2018 and observed what appeared to be a mathematical error in the November 2017 order. The judge then sent that issue back to the Arbitrator for explanation,[3] and in all other respects, the judge upheld the Arbitrator's decisions and entered the order under review (March 2018 confirmation order).

## II.

We begin by addressing defendant's contention that the arbitration agreement was invalid. She argues the agreement—to which she never objected—failed to meet the requirements of Rule 5:1-5(b). However, applying

---

[3] The Arbitrator corrected the mathematical error by order dated April 2, 2018, amending the award entered in the Barclays settlement dispute in favor of plaintiff from $326,972.57 to $344,972.58.

a de novo review of the arbitration agreement's legality, the record contains sufficient information for us to agree with the judge that the procedures utilized substantially followed court rules.

Rule 5:1-5, which became effective on September 1, 2015, applies to agreements or consent orders to arbitrate disputes in the Family Part. The rule requires the agreement or consent order to state the following:

> (i) the parties understand their entitlement to a judicial adjudication of their dispute and are willing to waive that right;
>
> (ii) the parties are aware of the limited circumstances under which a challenge to the award may be advanced and agree to those limitations;
>
> (iii) the parties have had sufficient time to consider the implications of their decision to arbitrate; and
>
> (iv) the parties have entered into the Agreement or Consent Order freely and voluntarily, after due consideration of the consequences of doing so.
>
> [R. 5:1-5(b)(3)(A).]

The 2016 arbitration agreement—which satisfies this rule—reflects that the parties discussed its terms with counsel. It said "that they have given independent reflection and judgment to the terms and provisions," and that it "shall constitute a waiver by the parties of the right to trial or review by the [c]ourt, except as specifically provided" by statute, and that the waiver was

voluntary and "done without coercion or duress." Although Rule 5:1-5(b)(3)(A) and the sample agreement in Appendix XXIX-B use somewhat different language, the thrust of the provisions is the same, namely, to assure that the parties entering into arbitration do so voluntarily and knowingly.

## III.

We reject defendant's contentions that the Arbitrator exceeded his authority by: (1) acting as both a mediator and arbitrator; (2) assuming the duties of an arbitrator "[b]efore the [a]rbitration [a]greement [e]xisted"; (3) determining an issue outside the scope of arbitration; and (4) conducting an "[i]ndependent [f]actual [i]nvestigation."

## A.

In Minkowitz v. Israeli, we considered "the compatibility of the same party assuming the role of mediator and arbitrator," and held that "absent the parties' agreement," an arbitrator "may not assume the role of mediator and, thereafter, resume the role of arbitrator." 433 N.J. Super. 111, 142 (App. Div. 2013). We noted that an inherent conflict exists between the role of mediator and arbitrator, largely because mediators "may become privy to party confidences in guiding disput[es]" and "are not limited to developing the facts" based on the testimony and evidence submitted. Id. at 142-43. By contrast, the

role of an arbitrator "is evaluative," who "essentially weigh[s] evidence, assess[es] credibility, and appl[ies] the law when determining whether a party has proven his or her request for relief." Id. at 144. This court explained:

> Based on our review of the distinctly different proceedings of arbitration and mediation, we conclude the positions of arbitrator and mediator are in conflict. An arbitrator must "maintain 'broad public confidence in the integrity and fairness of the [arbitration] process.'" If the same person acts as a mediator, obtains party confidences or offers opinions on the issues in dispute, a conflict arises were he or she to then switch roles to act as an arbitrator, making the final call. We find the need for an arbitrator's complete objectivity bears heavily on the integrity of the arbitration process. This concern becomes even more problematic when arbitrating matrimonial disputes between already suspicious adverse parties.
>
> [Id. at 146-47 (alteration in original) (citations omitted).]

This court concluded that "[a]bsent a specific agreement clearly defining and accepting the complementary dispute resolution professional's roles, dual roles are to be avoided." Id. at 147. Because the arbitrator in Minkowitz guided a mediation and then assumed the role of arbitrator without the parties' consent, this court held that he exceeded his powers. Id. at 148.

Here, unlike Minkowitz, the parties affirmatively agreed to the Arbitrator's dual role. Defendant argues the waiver language in the 2016

9

arbitration agreement is insufficient, but the waiver justifying the Arbitrator's initial assumption of the dual role occurred prior to December 2016. In the September 2014 CO, the parties agreed that the issue of certain child-related expenses would be resolved "by retaining a retired family court judge to serve as mediator and then binding arbitrator on the issue," clearly anticipating that one retired judge would perform both roles. The Arbitrator successfully mediated some issues, memorialized in the April 2015 CO, which also provided that certain unresolved issues would be submitted to him as arbitrator. Thus, the parties' waiver is enforceable.

Moreover, in the 2016 arbitration agreement, the parties agreed to proceed to arbitration with the Arbitrator regarding the same expense-related issues that he unsuccessfully attempted to mediate. They also agreed that nothing in the 2016 arbitration agreement would "prevent the Arbitrator, with the written consent of the parties to the arbitration, from mediating . . . issues submitted, and such agreed-upon mediation shall not disqualify the Arbitrator from arbitrating the issue(s) should mediation not be successful." Defendant argues that the Arbitrator's "move back to service as a mediator in May of 2017" was improper because the parties did not give the written consent required by the 2016 arbitration agreement. However, the record does not establish that the

Arbitrator mediated in May 2017. On the first day of the arbitration hearing, he simply remarked that the day before he and the parties "had sort of a mediation all day long, trying to resolve certain issues," but they "were unable to do that." "Sort of a mediation" describes the type of pre-trial settlement discussions trial judges often facilitate, and this would not give rise to the inherent conflict that concerned the Minkowitz court.

Even if the Arbitrator acted as a mediator the day before the arbitration hearing commenced, the judge's finding that defendant waived any objection to the dual role was correct. Nothing in the record suggests that defendant objected to the Arbitrator conducting the "sort of a mediation" on May 9, 2017, and then proceeding to arbitration on May 10, 2017. Defendant did not raise any Minkowitz concerns until her efforts in the trial court to vacate the arbitration awards.

Tellingly, paragraph 12 of the proposed arbitration agreement contained in Appendix XXIX-B details the parties' options regarding the Arbitrator's roles, from prohibiting any dual role at all to permitting the Arbitrator to act as either a "settlement facilitator" or mediator. Appendix XXIX-B at 6-7. The paragraph's note explains that the parties should expressly agree to any dual role,

but it also notes that "[f]ailure to object to the mediator resuming the role of arbitrator is deemed a waiver of the right to object." Appendix XXIX-B at 7.

Prior to executing the 2016 arbitration agreement, the parties expressly opted to proceed with the same person as mediator and arbitrator regarding select expense-related issues. Then, in the 2016 arbitration agreement, the parties acknowledged that fact and agreed that they might consent going forward to that person functioning in a dual role again. Although consent to any resumption of that dual role in May 2017 was not memorialized in writing, the parties acquiesced to proceeding with a "sort of a mediation" followed by arbitration. Under these circumstances, defendant waived any objection to the Arbitrator's dual role.

Defendant also contends that the Arbitrator's dual role was improper because defendant "confided" in him—as a mediator—that "she was in severe financial distress due to her inability to receive reimbursements from [plaintiff] for the children's expenses and her inability to earn at her previous level because of significant health issues." She states that the Arbitrator's subsequent delay in deciding the reimbursement issue left her "no longer able to afford counsel" and forced her to represent herself "to her detriment."

12

Even when the dual role of mediator and arbitrator is allowed, "information learned by an arbitrator during the mediation process but not presented at the arbitration hearing may not be considered by the arbitrator in rendering the final decision." Twp. of Aberdeen v. Patrolmen's Benevolent Ass'n, Local 163, 286 N.J. Super. 372, 373-75 (App. Div. 1996) (holding that arbitration award should be vacated where arbitrator considered and was influenced by information presented solely during mediation).

Defendant did not previously raise the issue of the Arbitrator allegedly using "confidences." Indeed, following arbitration, defendant filed a motion to recuse and disqualify the Arbitrator, contending the Arbitrator's conduct was improper. However, she did not complain that the Arbitrator obtained or used confidential information. Thus, the plain error standard applies. R. 2:10-2 (providing that an appellate court will only notice error that is "clearly capable of producing an unjust result").

The record contains no certification or other evidence supporting defendant's allegations regarding the content of her discussions with the Arbitrator. Even if she told the Arbitrator—like she now contends—about her finance and health issues, these details also appear in her filings outside the context of mediation. In other words, there is nothing to suggest that defendant

13

told the Arbitrator any information as mediator that was not separately presented to him as Arbitrator.

Finally, there is no prejudice even if we assume defendant provided confidential information to the Arbitrator in his capacity as mediator. Defendant's suggestion of a link between her financial and health confidences and the timing of the Arbitrator's actions and decisions is speculative. Defendant implies that the Arbitrator purposely delayed resolving the matter with the intent of prejudicing her, but this implication is mere conjecture.

B.

Defendant argues that the Arbitrator exceeded his authority and showed "his misunderstanding of the arbitral process" by issuing the December 2016 order, which was written "nearly seven weeks before the [a]rbitration [a]greement was finalized." But the December 2016 order was unrelated to the 2016 arbitration agreement.

In issuing the December 2016 order, the Arbitrator was acting pursuant to the arbitral authority bestowed by the April 2015 CO, not under the as-yet-unexecuted 2016 arbitration agreement. The April 2015 CO provided that the parties would submit the issues of child support and the children's cell phone expenses to the Arbitrator as an arbitrator. It also provided that any future

disputes "as to payment of the children's expenses on a going forward basis" would be submitted "on an annual basis to [the Arbitrator]" for resolution. The December 2016 order specifically dealt with the expense-related issues earmarked for arbitration by the April 2015 CO. There is no basis to conclude that, in issuing the December 2016 order, the arbitrator anticipated or exercised any powers that became effective only when the 2016 arbitration agreement was executed.

Defendant contends that the April 2015 CO did not actually provide the arbitrator with the authority to issue the December 2016 order because the April 2015 CO (1) was "akin to an 'agreement to agree' about arbitration," and (2) did not have "all the necessary components of an arbitration agreement, including the requirements of Rule 5:1-5."

The April 2015 CO, however, was not merely an "agreement to agree." Although the parties did not know the precise sums that would be at issue "on a going forward basis" when they signed the April 2015 CO, they unequivocally agreed to submit their child-related expense disputes to arbitration. To be enforceable, a contract "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting W. Caldwell v.

Caldwell, 26 N.J. 9, 24-25 (1958)). The April 2015 CO was sufficiently definite as to the specific financial issues subject to arbitration.

Defendant's contention that the April 2015 CO failed to include "the requirements of Rule 5:1-5" is true, but respectfully irrelevant. That rule did not take effect until nearly five months after the April 2015 CO was entered, and nothing in the Rule supports the retroactive invalidation of enforceable arbitration agreements. More fundamentally, even assuming that the April 2015 CO did not provide the arbitrator with the authority to issue the December 2016 order, at the trial level, defendant did not challenge any of the December 2016 order's provisions, nor does she challenge them on appeal. To the contrary, defendant contends that the December 2016 order controlled the scope of arbitration.

## C.

The judge noted the 2016 arbitration agreement provided that the arbitrator could decide "[a]ll issues that could have been raised and adjudicated" in the trial court, and that the parties long-recognized that "the equitable distribution of the [Barclays] settlement was an outstanding issue" needing resolution. The judge found that the Arbitrator did not exceed his authority by

determining plaintiff's share of the Barclays settlement. We also see no error in the Arbitrator deciding the Barclays settlement issue.

Relying on N.J.S.A. 2A:23B-6(b), which provides that "[t]he court shall decide whether . . . a controversy is subject to an agreement to arbitrate," defendant argues the Arbitrator lacked authority to make that determination. However, the statute expressly provides that "a party to an agreement to arbitrate or to an arbitration proceeding may waive or, the parties may vary the effect of, the requirements of this act to the extent permitted by law." N.J.S.A. 2A:23B-4(a). In the December 2016 CO, the parties agreed that "[t]he arbitrator shall determine whether an issue or dispute is within the scope of his jurisdiction[,]" thus, effectively waiving the right to have the court make such a determination. Moreover, subsection (d) of the statutory provision cited by defendant states:

> If a party to a judicial proceeding . . . claims that a controversy is not subject to, an agreement to arbitrate, the arbitration proceeding may continue pending final resolution of the issue by the court, unless the court otherwise orders.
>
> [N.J.S.A. 2A:23B-6(d).]

The judge independently reviewed the scope of the 2016 arbitration agreement and concluded that the Arbitrator correctly determined that the Barclays settlement dispute was within that scope of arbitration. Thus, even if the 2016

17

arbitration agreement did not confer on the Arbitrator the right to determine the scope of the issues to be arbitrated, he nevertheless was permitted to proceed and determine the Barclays settlement issue, subject to final review and resolution by the judge.

Defendant also argues that "[the Arbitrator's] contract analysis was faulty" because he ignored the principle that "[w]hen both general language of a contract and specific language address the same issue, the specific language controls[.]" This is a general principle of contract construction. See, e.g., Bauman v. Royal Indem. Co., 36 N.J. 12, 22 (1961) (stating "[i]n the interpretation of a contractual instrument, the specific is customarily permitted to control the general and this ordinarily serves as a sensible aid in carrying out its intendment"); Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 48 (App. Div. 2010) (referencing "the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more general"); Burley v. Prudential Ins. Co. of Am., 251 N.J. Super. 493, 500 (App. Div. 1991) (recognizing "[w]here two clauses in a contract clearly conflict, the more specific provision . . . usually controls over the more general").

Defendant, however, ignores another principle of contract construction, namely that "in the event of potentially contradictory terms, 'the several parts of a contract should be so construed as to avoid conflict.'" Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n, 456 N.J. Super. 480, 494 (Law Div. 2018) (quoting Silverstein v. Dohoney, 32 N.J. Super. 357, 364 (App. Div. 1954)). Similarly, "a subsidiary provision should not be interpreted in such a manner as to conflict with the obvious or dominant purpose of the contract." Wheatly v. Sook Suh, 217 N.J. Super. 233, 240 (App. Div. 1987).

Here, the 2016 arbitration agreement plainly states that "[a]ll issues that could have been raised and adjudicated by the Court in the New Jersey Superior Court, Family Part – both interim and final – shall be subject to the jurisdiction of and determination by the arbitrator[.]" The handwritten notation, "[s]ee [December 2016 order] as to the scope of the hearing," included as part of the paragraph acknowledging the Arbitrator's dual role, is more specific. But it need not be construed as conflicting with the broad grant of jurisdiction. The specific provision does not reference the December 2016 order as defining the "exclusive" or "limited" scope of arbitration. Rather, it could be read as simply indicating that the hearing will include, but not necessarily be limited to, the issues specified in the December 2016 order. This reading would harmonize

with the provision granting jurisdiction of "[a]ll issues that could have been raised" in court to the Arbitrator, without rendering that provision meaningless. Accordingly, there was no error in the judge's determination that the Barclays settlement issue was within the scope of the 2016 arbitration agreement.

D.

Defendant argues that the Arbitrator "committed misconduct by conducting an independent investigation of the charging lien" when he contacted defendant's former counsel "without [defendant's] knowledge or consent." She complains that she was deprived of the "opportunity to rebut or explain the evidence" provided by former counsel. We see no improper conduct or prejudice. We consider defendant's contention under the plain error standard since she raised it for the first time on appeal. R. 2:10-2.

The Arbitrator acted with defendant's knowledge. In July 2017, he wrote former counsel inquiring as to the status of any lien, and he copied both parties' counsel. Eleven days later, at the hearing, and with defendant present, the Arbitrator referenced his letter to former counsel, and defendant acknowledged the letter by emailing the Arbitrator regarding that letter.

Most significant, even if the Arbitrator exceeded his powers by contacting former counsel—which is not the case—that contact did not prejudice

defendant's rights in arbitration. The Arbitrator noted that defendant had the burden of establishing the existence and amount of any lien, which defendant concedes. Defendant testified that the lien was for the entire settlement amount; the Arbitrator found that her testimony was unpersuasive on this point and that defendant failed to present any proof of the existence or amount of any recorded lien. Defendant failed to carry her burden, regardless of the information the Arbitrator received from former counsel. Indeed, by contacting former counsel, the Arbitrator provided defendant with an alternative means of proving the existence of a charging lien. Former counsel's statement that defendant owed money to her that she was not pursuing did not contribute to defendant's failure to carry her burden on this point.

## IV.

Defendant argues that the arbitration awards should be vacated because she was denied discovery, the Arbitrator refused to adjourn the hearing, and the awards were "procured based on [plaintiff's] fraud with respect to his interests in multiple family trusts[.]" The judge found that vacating the arbitration award on these bases was not warranted. Defendant failed to show fraud or arbitrator misconduct.

Although defendant characterizes her position as contending that she was unfairly denied a postponement and that the arbitration award was the result of fraud, which would provide bases to vacate the award under N.J.S.A. 2A:23B-23(a)(1) and (3), the substance of her argument actually concerns the timing and extent of the discovery to regarding plaintiff's family trusts. Disputes regarding discovery do not provide a valid basis to vacate an arbitration award.

The December 2016 order provided that "[e]ach party shall be entitled to initiate and to complete discovery which shall be conducted in accordance with the New Jersey Rules of Court. Any and all disputes concerning discovery shall be submitted to the Arbitrator for resolution." Decisions on discovery matters are reviewed for abuse of discretion. Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79 (2017). "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Id. at 79-80 (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

Defendant argues that the Arbitrator should have delayed the final days of the arbitration hearing, which concluded in November 2017, because she did not receive the "voluminous" discovery containing a "large amount of information"

regarding plaintiff's family trusts until September. However, she does not detail the extent of the discovery received or explain why, even if she was unable to review it before the September 25 hearing date, the seven weeks between receipt and the November hearing dates were insufficient. Most significantly, she does not contend that, had she been granted the requested adjournment, she would have been able to present a better case or bring additional relevant documents or information to the Arbitrator's attention.

Regarding her claims that plaintiff had an undisclosed interest in trusts other than his father's, defendant acknowledges that this purported "fraud" was something that she "alleged but could not prove without discovery." However, she ultimately obtained discovery that she now characterizes as "voluminous," and she does not specify what discovery was requested but denied. Similarly, defendant does not explain what relevant information she would have obtained through additional discovery, beyond her hope of uncovering evidence of fraud. Thus, there is no basis to conclude that the Arbitrator's rulings concerning discovery were an abuse of discretion.

The sole piece of evidence defendant cites to support her fraud claim is the plaintiff's mother's trust check, which was made payable to plaintiff and was written three months after plaintiff's counsel asserted this trust was liquidated.

However, this alone does not establish fraud, and the Arbitrator was free to accept plaintiff's explanation that he was not a beneficiary of his mother's trust and that his name on the payee line of a single check was an error of which he had no knowledge.

V.

Finally, defendant argues that the arbitration awards should be vacated "due to [the Arbitrator's] conduct in the hearing, which substantially prejudiced [her] rights," and showed "disparate treatment" of the parties. Defendant contends that the Arbitrator exhibited preferential treatment toward plaintiff in various ways.

First, she states that the Arbitrator allowed plaintiff "to exceed the original scope of the arbitration" by addressing the Barclays settlement, but he refused her request "to similarly exceed the scope by investigating the [plaintiff's] family trusts." The Arbitrator's decision on the scope-of-arbitration-Barclays-settlement issue did not impact his decision on the scope-of-discovery-trusts issue. The two were legally and factually unrelated, with the first concerning a contractual interpretation issue and the second concerning appropriate discovery. Moreover, the Arbitrator's decisions on both issues was legally

correct, so the fact that defendant's position did not carry the day on either issue does not warrant the conclusion that the Arbitrator was improperly biased.

Second, defendant complains that the judge refused her request for an adjournment after she received "thousands of pages of new financial information," even though he granted plaintiff's counsel's "multiple requests for adjournment." The Arbitrator was justified in denying defendant's request, and defendant was not prejudiced because of it. Moreover, defendant presents no details regarding the basis for the "multiple requests for adjournment" that she says were made by plaintiff's counsel, nor does she explain whether those requests were made prior to the beginning of arbitration or, like hers, after the hearing commenced. Thus, there is no basis to conclude that the Arbitrator granted adjournment requests by plaintiff's counsel that bore any similarity to defendant's request.

Third, defendant argues that the Arbitrator's preferential treatment toward plaintiff can be inferred from the language the Arbitrator used in the February 2018 decision, which she maintains was slanted in plaintiff's favor. The language defendant cites, however, reflects the Arbitrator's important credibility determinations and legal conclusions, which were well-explained and supported.

Fourth, defendant contends that the Arbitrator imposed "a nearly impossible high standard of formality in the hearings," given her status as a self-represented litigant. But she does not suggest that her case was prejudiced because she was forced to meet this standard or that the Arbitrator would have had additional relevant evidence or that his decisions would likely have been different if the proceeding was more relaxed.

It is well-known that "the scope of review of an arbitration award is narrow." Fawzy v. Fawzy, 199 N.J. 456, 470 (2009). Indeed, "[a]rbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, meant to be a substitute for and not a springboard for litigation." Id. at 468 (citation omitted). To that end, "[a]rbitration should spell litigation's conclusion, rather than its beginning." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (first alteration in original) (citation omitted).

Moreover, "[t]he public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). This "strong public policy" also favors "using arbitration in family litigation[.]" Minkowitz, 433 N.J. Super. at 131-32. Accordingly, "courts grant arbitration awards considerable deference."

E. Rutherford PBA Local 275, 213 N.J. at 201.  Because the trial judge's decision to affirm or vacate an arbitration award is a decision of law, our review is de novo.  Minkowitz, 433 N.J. Super. at 136; see also Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

N.J.S.A. 2A:23B-23 specifies the limited bases for vacating an arbitration award, providing:

> a. Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
>
> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers;
>
> (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or

(6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of this act so as to substantially prejudice the rights of a party to the arbitration proceeding.

The court can vacate an arbitration award "only when one of the limited bases set forth in N.J.S.A. 2A:23B-23 has occurred." Minkowitz, 433 N.J. Super. at 152 (emphasis omitted). The party seeking to vacate the award bears the burden of establishing a basis to vacate. Id. at 136; see also Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 510 (App. Div. 2004) (noting that "because of the strong judicial presumption in favor of the validity of an arbitral award, the party seeking to vacate it bears a heavy burden"). Here, defendant has not met these standards.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION