NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1311-12T3


IRVIN B. BEAVER,

    Plaintiff-Appellant,

v.

MAGELLAN HEALTH SERVICES,
INC., MAGELLAN BEHAVIORAL
HEALTH, INC., and HORIZON
BLUE CROSS BLUE SHIELD OF
NEW JERSEY,

    Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

December 11, 2013

APPELLATE DIVISION

    Argued October 21, 2013 — Decided December 11, 2013

    Before Judges Parrillo, Kennedy and Guadagno.

    On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3465-12.

    Justin Lee Klein argued the cause for the appellant (Wilentz Goldman & Spitzer, and Hobbie, Corrigan & Bertucio, attorneys; Angelo J. Cifaldi and Jacqueline DeCarlo, of counsel and on the brief; Mr. Klein, on the brief).

    Thomas F. Quinn argued the cause for respondents (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Mr. Quinn and Joanna Piorek, on the brief).

The opinion of the court was delivered by

KENNEDY, J.A.D.

Under what circumstances may a litigant pursue common law and statutory causes of action in the Law Division, rather than appeal from State final agency determination, where the merits of the agency determination are at issue? This is the question we address in deciding this appeal.

Plaintiff appeals from an October 12, 2012 order of the Law Division dismissing his complaint against defendants Magellan Health Services, Inc., Magellan Behavioral, Inc., and Horizon Blue Cross/Blue Shield of New Jersey ("defendants" when referenced collectively, "Magellan" or "Horizon" when referenced individually). Plaintiff argues, among other things, that the motion judge erred in applying the standards governing a motion to dismiss under Rule 4:6-2, and in determining that the Law Division lacked subject matter jurisdiction over the matter.

We have considered plaintiff's arguments in light of the record and applicable law. For reasons stated hereinafter, we affirm.

I.

We derive the facts from the record developed in the Law Division and the administrative proceedings which preceded the filing of plaintiff's complaint in the Law Division.

Plaintiff is a former public employee and received health insurance coverage for himself and his family through the NJ Plus and, later, the NJ Direct health benefits programs, which at all times relevant to this matter were administered by Horizon on behalf of the State Health Benefits Program (Program). The Program, and its governing body, the State Health Benefits Commission (SHBC), were established by the New Jersey Health Benefits Program Act (the Act), N.J.S.A. 52:14-17.24 to -45. The purpose of the Program is "to provide comprehensive health benefits for eligible public employees and their families . . . . It establishes a plan for state funding and private administration of a health benefits program[.]" Heaton v. State Health Benefits Comm'n, 264 N.J. Super. 141, 151 (App. Div. 1993). "The SHBC contracts with health insurers to provide various benefits plans to program participants." Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 413 (App. Div. 2004)(citing N.J.S.A. 52:14-17.28). "The State Health Benefits Program is, in effect, the State of New Jersey acting as a self-insurer." Burley v. Prudential Ins. Co. of Am., 251 N.J. Super. 493, 495 (App. Div. 1991). In essence, the State pays the benefits and Horizon administers the claims.

Although the State contracts with health insurers to administer various benefit plans for program participants, the

SHBC alone has the authority and responsibility to make payments on claims and to limit or exclude benefits. N.J.S.A. 52:14-17.29(B). Additionally, the SHBC has final authority to adjudicate disputes between plan members and State-contracted claims administrators, and may refer such disputes to the Office of Administrative Law (OAL) for an evidentiary hearing. Green, supra, 373 N.J. Super. at 414; Burley, supra, 251 N.J. Super. at 500.

Horizon hired Magellan to manage mental health and substance abuse benefits for eligible NJ Plus members. Magellan would conduct "utilization management reviews" of claims submitted by members, and would decide if the treatment was medically needed, and, if so, the level and length of treatment. As noted, however, the SHBC itself had the final authority and responsibility to adjudicate any claim disputes.

On February 10, 2008, plaintiff's son, a minor, was admitted for inpatient, residential care at the Caron Foundation, a residential treatment facility for substance abuse. Initially, Caron prescribed thirty-one days of inpatient care, but later revised its recommendation to include an additional ninety days of inpatient, residential treatment.

Plaintiff submitted a claim for coverage and on February 26, 2008, Magellan advised that it would not authorize

residential substance abuse treatment "as of" February 25, because plaintiff's son "no longer shows evidence" that he needs residential treatment. Plaintiff challenged the denial and Magellan undertook a "Level 1 appeal review." On February 28, Magellan advised that its prior denial was proper, and cited a telephone conversation between one of the son's doctors at Caron and its own physician advisor in which the son's doctor allegedly agreed that outpatient care was the appropriate level of treatment.

Plaintiff shortly learned that Magellan's physician advisor had, in fact, not spoken to the particular Caron physician identified in Magellan's notification of February 28, but to another of the son's doctors who alleged he never stated that the son required only outpatient treatment. Accordingly, plaintiff sought further review, and on March 11, 2008, presented a "second level appeal" for coverage to Horizon's Member Appeals Subcommittee.

On March 14, Horizon overturned the denial of coverage for residential treatment for the period of February 26 to March 4, but denied coverage after that date, finding that plaintiff's son "did not show any evidence" of needing residential treatment thereafter. Plaintiff next appealed to the SHBC, which, by

letter dated February 17, 2009, upheld the denial of benefits after March 4, 2008. The letter stated, in part:

> The denial is based on your presentation at the meeting as well as the documents you provided during and prior to the meeting. Magellan's medical director gave a background summary of the appeal and indicated that he reviewed the additional medical notes received from the Caron Foundation. He indicated that [your son] did not meet the ASAM [American Society of Addiction Medicine] criteria after March 5, 2008 for inpatient residential treatment.
>
> Your written request for appeal of the initial administrative decision must specify the exact reason or reasons that you are using as the basis for the request. It must also include any evidence or material that can be used to support your basis of appeal.
>
> The Commission will decide whether to grant your request for a hearing in the Office of Administrative Law upon receipt of your request and the supporting documentation.

The letter also advised that if the appeal were forwarded to the OAL, an administrative law judge (ALJ) would consider evidence presented and render a decision, which the SHBC could accept, modify or reject. The SHBC would then issue a final administrative decision "which may then be appealed to the Superior Court of New Jersey, Appellate Division."

Plaintiff elected to pursue a further appeal and the matter was transferred to the OAL, where an evidentiary hearing was held. On October 11, 2011, the ALJ issued her initial decision

recommending denial of plaintiff's appeal.  She explained, in part, as follows:

> Under the NJ Plus plan in place at the time of the claim at issue in this matter, Horizon contracted with Magellan to manage its mental health and substance abuse treatment claims.  Initially, [plaintiff] takes issue with Magellan's role in managing these claims, in general and specifically as to his son's treatment.  While Magellan's actions are under review here as to his son's claim, the issue of Magellan's "gatekeeper" role for the state plan is beyond the scope of this matter.  At issue in this matter is whether respondent SHBC properly determined that the criteria for medical necessity to continue inpatient treatment at Caron for [the son] was no longer met.  [Plaintiff] has the burden of proof in this matter and must prove his case by a preponderance of the credible evidence. Atkinson v. Parsekian, 37 N.J. 143 (1962).
>
> A review of the record in this matter shows that [plaintiff] has failed to meet that burden of proof.  Although he has raised substantive issues regarding the manner in which Magellan handled this claim, he did not submit a sufficient quantum of evidence to prove by a preponderance of the credible evidence that the SHBC erred in its decision.
>
> [Plaintiff] did show that Magellan was incorrect when it cited [the son's] treating physician as the Caron staff member with whom it initially discussed his treatment. The record also supports his contention that Magellan's records were further incorrect in citing Caron staff as supporting his transfer to intensive outpatient treatment. Given the seriousness of the treatment at issue, it is of concern that Magellan denied further inpatient treatment on the basis of

7

faulty information in its records. That initial denial however was corrected during the first and second level appeal process and residential treatment was approved through March 4, 2008. The issue therefore is whether [plaintiff] has proven that the SHBC erred in its decision that the residential level of treatment was not medically necessary after that time.

In support of his contention that continued residential treatment was necessary, [plaintiff] presented treatment notes from Magellan's records and correspondence from Caron staff directors. The correspondence from the treating staff at Caron supports continued residential treatment, citing relevant ASAM [American Society of Addiction Medicine] criteria. Balanced against that however, is the expert medical testimony and report of Dr. O'Donnell presented on behalf of respondent. His testimony also addressed the relevant criteria for medical necessity, reaching a different conclusion than that of the Caron doctors. Dr. O'Donnell's interpretation of the ASAM criteria was more conservative than that of the Caron physicians as set forth in their correspondence. In weighing the evidence, however, greater weight is on the side of respondent. While the Caron physicians were the treating doctors, only their correspondence was presented in evidence. [Plaintiff] presented neither their curriculum vitae nor their testimony in support of his case. As such neither their credentials nor their testimony was subject to the scrutiny and cross examination undergone by Dr. O'Donnell.

As [plaintiff] has not met his burden of proof, his appeal is denied.

On November 14, 2011, the SHBC adopted the ALJ's findings and conclusions.

On December 28, 2011, plaintiff filed a notice of appeal from the SHBC's final decision. Plaintiff later voluntarily withdrew his appeal and the appeal was dismissed on May 18, 2012.

On May 14, 2012, plaintiff filed a complaint in the Law Division seeking "relief for [d]efendants' denial of substance abuse treatment as a violation of plaintiff's health plan" and named only Horizon and Magellan as defendants. The complaint recited the history of plaintiff's efforts to secure coverage for his son's inpatient, residential substance abuse treatment and asserted four causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to —184 (CFA); and (4) unjust enrichment.

In support of the first count alleging breach of contract, plaintiff asserted that "under the terms of defendants' contract with [] plaintiff, defendants are required to provide coverage for all inpatient treatment for mental health and substance abuse disorders" and breached that contract by their denial of coverage for inpatient treatment. In the second count, plaintiff asserted that defendants violated the duty of care they owed as fiduciaries by "setting limitations on payments and denying or reducing coverage" for substance abuse treatment.

The third count alleged that defendants' "wrongful decision to deny payment for" the continued inpatient treatment for plaintiff's son constituted an unconscionable commercial practice under the CFA. The last count stated that defendants have been "unjustly enriched" through their use of funds that should have been used to pay for the inpatient treatment of plaintiff's son.

Defendants moved to dismiss plaintiff's complaint under Rule 4:6-2(a) (lack of jurisdiction) and Rule 4:6-2(e) (failure to state a claim). In a lengthy opinion from the bench delivered on October 12, 2012, the motion judge considered the history of plaintiff's claim as recited in the pleadings, and held that "plaintiff should have instituted this action in the Appellate Division" and that a transfer of the matter to the Appellate Division under Rule 1:13-4(a) at that point was time-barred.

The motion judge then entered an order of dismissal and this appeal followed.

## II.

Plaintiff argues that his complaint does not constitute "one of the 'rare instances' in which a complaint should be dismissed as a matter of law, prior to the exchange of any discovery." Further, he asserts that his complaint does not

challenge the SHBC's final administrative action, but rather is a separate action at law alleging statutory and common law causes of action against Magellan and Horizon. Plaintiff relies upon Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387 (App. Div. 2006), and Burley, supra, 251 N.J. Super. 493, in support of the latter argument.

Initially, we observe that despite the reference to Rule 4:6-2(e) in defendants' brief in the Law Division, the motion judge held that the case must be dismissed on jurisdictional grounds, thereby embracing defendants' arguments under Rule 4:6-2(a). "Whether subject matter jurisdiction exists presents a purely legal issue . . . which we review de novo." Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012), certif. denied, 214 N.J. 175 (2013); see Manalapan Realty, L.P. v. Twp. of Manalapan, 140 N.J. 366, 378 (1995). Accordingly, the issue before us is not whether the four causes of action alleged in plaintiff's complaint are sufficiently pled under Rule 4:6-2(e), but rather whether plaintiff can assert those causes of action in the Law Division under the circumstances presented. As noted, this is an issue of law which we review de novo.

Pursuant to the Act, the SHBC "shall establish a health benefits program for the employees of the State," together with

the "rules and regulations as may be deemed reasonable and necessary for the administration of" the program. N.J.S.A. 52:14-17.27. Pursuant to the enabling legislation's grant, the SHBC adopted a comprehensive regulatory appeals process:

> (a) Any member of the [Plan] who disagrees with the decision of the claims administrator and has exhausted all appeals within the plan, may request that the matter be considered by the Commission. . . . It shall be the responsibility of the member to provide the Commission with any medical or other information that the Commission may require in order to make a decision.
>
> (b) . . . .
>
> (c) Notification of all Commission decisions will be made in writing to the member and the following statement shall be incorporated in every written notice setting forth the Commission's determination in a matter where such determination is contrary to the claim made by the claimant or his or her legal representative:
>
>> "If you disagree with the determination of the Commission in this matter, you may appeal by sending a written statement to the Commission within 45 days from the date of this letter informing the Commission of your disagreement and all of the reasons therefor. If no such written statement is received within the 45-day period, this determination shall be considered final."
>
> (d) Any member who disagrees with the Commission's decision and submits the written statement as set forth in (c) above within 45 calendar days shall be notified of

12

the disposition of the appeal in one of two ways:

> 1. The Commission shall determine whether to grant an administrative hearing on the basis of whether the matter involves contested facts or is solely a question of law. If the appeal involves solely a question of law, the Commission shall likely deny an administrative hearing request. If the request for an administrative hearing is denied, the Commission shall issue detailed findings of fact and conclusions of law. These findings and conclusions shall become the Commission's final administrative determination that may be appealed to the Superior Court, Appellate Division.

> 2. If the appeal involves disputed facts, the Commission shall approve an administrative hearing request and transmit the matter to the Office of Administrative Law. Upon completion of this hearing, the Administrative Law Judge will submit to the Commission an initial decision that the Commission may adopt, reject or modify. If the Commission rejects or modifies the initial decision, it shall issue detailed findings of fact and conclusions of law that will become the Commission's final administrative determination that may then be appealed to the Superior Court, Appellate Division.

> [N.J.A.C. 17:9-1.3.]

The language in Horizon's handbook tracks the regulatory language adopted by the SHBC. Further, as already noted, we

13

have consistently recognized the statutory and regulatory scheme that requires disputes over eligibility and benefits to be submitted first to the SHBC, and, only thereafter, to this court for resolution. See Burley, supra, 251 N.J. Super. 493; Green, supra, 373 N.J. Super. 408; Murray v. State Health Benefits Comm'n., 337 N.J. Super. 435, 439-40 (App. Div. 2001) (explaining the statutory and regulatory scheme).

Plaintiff contends he is not challenging the SHBC determination in his present complaint, but rather is asserting contract and tort claims against the Program administrators. Plaintiff essentially argues that the SHBC final agency action is irrelevant to his asserted causes of action. Defendants argue that the language in plaintiff's complaint shows plainly that, irrespective of the causes of action asserted, plaintiff is simply seeking coverage for his son's inpatient substance abuse treatment, and that a reversal of the SHBC determination is essential to plaintiff's complaint. Our examination of the causes of action set forth in plaintiff's complaint is therefore pivotal to our determination of jurisdiction.

We begin with an examination of the authority cited by plaintiff and thereafter we shall examine the language of the complaint.

In _Rinaldo_, plaintiffs brought an action against a neighboring landowner who had obtained a freshwater wetlands permit from the Department of Environmental Protection (DEP) to construct an access road over protected wetlands. _Rinaldo_, _supra_, 387 _N.J. Super._ at 392-93. Plaintiffs had not received notice of the permit application and brought an action to enjoin the construction of the road and a corresponding "mitigation project" required by the DEP. _Ibid._ Plaintiffs also sought money damages for injury to their farm, and asserted claims against the landowner and its contractors for negligence, trespass, conversion and intentional interference with property rights. _Id._ at 393-94.

On motion, the Chancery Division transferred the entire case to the Appellate Division as, in effect, an appeal from a final decision of the DEP. _Id._ at 394. We held that the Chancery Division erred in concluding that plaintiffs' tort claims against the landowner and other private parties should have been transferred to the Appellate Division. _Id._ at 399-400. We stated, in part,

> Plaintiffs could have filed a notice of appeal to this court from the DEP's wetlands permit and mitigation project approvals and filed a separate action in the Chancery Division asserting their tort claims against the private defendants. The fact that plaintiffs elected to challenge state administrative agency decisions and assert

> tort claims against private parties in a single complaint does not vest this court with jurisdiction over claims that the Court Rules allocate to the jurisdiction of the Chancery or Law Division. See Maisonet v. N.J. Dep't of Human Servs., 140 N.J. 214, 226-28 (1995).
>
> [Id. at 400.]

We added that even if plaintiffs were unsuccessful in challenging the DEP wetlands permit in the Appellate Division, this would "not foreclose them from pursuing their tort claims against the private defendants." Ibid.

In Burley, plaintiff, a State employee with health insurance under the Program, brought suit in the Law Division against Prudential, the State's claims administrator, for bad faith in declining to pay the full amount sought by her physician for a procedure he had performed, and in its refusal to advise in advance of the "customary fee" it would approve for her son's prescribed tonsillectomy. Burley, supra, 251 N.J. Super. at 494-96. The suit was dismissed in the Law Division based upon plaintiff's failure to exhaust her administrative remedies. Id. at 494-95.

On appeal, we affirmed, but modified, the ruling in the Law Division. We observed that

> plaintiff must first seek recourse by administrative appeal to the SHBC. Both sound principles of administrative law and the relevant contract provisions require the

plaintiff to seek administrative relief before attempting to sue for damages. All available and appropriate administrative remedies generally should be fully explored "before judicial action is sanctioned." <u>Abbott v. Burke</u>, 100 <u>N.J.</u> 269, 296 (1985). The "exhaustion" principle ensures that claims will be heard as a preliminary matter by a body with expertise, a factual record may be created for appellate review, and there is a chance that the agency decision may satisfy the parties and keep them out of court. <u>Atlantic City v. Laezza</u>, 80 <u>N.J.</u> 255, 265 (1979).

[<u>Id.</u> at 498.]

We transferred the matter to the SHBC for a hearing on the merits of plaintiff's claim under the Program, and added that "[o]ur action, is of course, without prejudice to any claim plaintiff may wish to assert administratively or at law against either Prudential or the SHBC." <u>Id.</u> at 500.

Here, by contrast, plaintiff has explicitly stated that his complaint is brought to recover "unpaid benefits" under the Program. Accordingly, to recover, plaintiff must necessarily secure a reversal of the SHBC final agency action upholding the denial of those same benefits. Plaintiff cannot avoid this obvious conclusion by cloaking his claims under the mantle of contract and tort.

The New Jersey Constitution of 1947 provides that "persons aggrieved by action or inaction of state or local administrative agencies could seek review . . . in the Superior Court '. . . on

terms and in the manner provided by rules of the Supreme Court . . . .'" Pascucci v. Vagott, 71 N.J. 40, 51-52 (1971) (quoting N.J. Const. art. VI, § 5, ¶ 4). Pursuant to that authority, the Court adopted Rules 2:2-3 and 2:2-4, with the intention that "every proceeding to review the action or inaction of a state administrative agency would be by appeal to the Appellate Division." Cent. R.R. Co. v. Neeld, 26 N.J. 172, 185, cert. denied, 357 U.S. 928, 78 S. Ct. 1373, 2 L. Ed. 2d 1371 (1958). Specifically, Rule 2:2-3 states that "appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer." R. 2:2-3(a)(2). So too, "the Appellate Division may grant leave to appeal, in the interest of justice, . . . from an interlocutory decision or action of a state administrative agency or officer, if the final judgment, decision or action thereof is appealable as of right pursuant to R. 2:2-3(a) . . . ." R. 2:2-4.

To be sure, "some actions or inactions of State agencies and officers do not constitute 'administrative' agency action or inaction that is subject to review by the Appellate Division under Rule 2:2-3(a)(2)." D.J. Miller & Assocs., Inc. v. State, Dep't of Treasury, 356 N.J. Super. 187, 191 (App. Div. 2002). One obvious example is tortious conduct that subjects a State

agency or officer to liability under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Ibid. Another example is an action for breach of contract under the Contractual Liability Act (CLA), N.J.S.A. 59:13-1 to -10, "which does not constitute State administrative agency action within the intent of Rule 2:2-3(a)(2) and thus jurisdiction over such a claim resides in the appropriate trial court rather than the Appellate Division." Id. at 192.

In a thinly disguised effort to fit within the Law Division's jurisdiction and divest this court of ours, plaintiff framed his claims as those alleging breach of contract, breach of fiduciary duty, consumer fraud under the CFA, and unjust enrichment. Ordinarily, if properly pled and substantively based, these claims might be sufficient to vest the Law Division with jurisdiction. However, our "exclusive jurisdiction does not turn on the theory of the challenging party's claim or the nature of the relief sought." Mutschler v. N.J. Dep't of Envtl. Prot., 337 N.J. Super. 1, 8 (App. Div.) (citing Neeld, supra, 26 N.J. at 184-85), certif. denied, 168 N.J. 292 (2001)). Here, stripped to their barest essentials, plaintiff's claims, sounding in tort and contract, amount to no more than a collateral challenge to the November 14, 2011 SHBC final agency action upholding the limitation of coverage for plaintiff's

health benefit claims. Indeed, absent an attack on that final agency action, plaintiff's tort and contract claims are patently without basis in fact or law.

As we stated in Mutschler:

> The Appellate Division has been vested with exclusive jurisdiction to review any action or inaction of a state administrative agency. Pascucci v. Vagott, 71 N.J. 40, 51-54 (1976); Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation, 151 N.J. Super. 232, 237-38, (App. Div.), certif. denied, 75 N.J. 535 (1977). The Appellate Division's exclusive jurisdiction does not turn on the theory of the challenging party's claim or the nature of the relief sought. Central R.R. Co. v. Neeld, 26 N.J. 172, 184-85, cert. denied, 357 U.S. 928, 78 S. Ct. 1373, 2 L. Ed. 2d 1371 (1958). Thus, this court's exclusive jurisdiction extends to claims of state agency inaction, Hospital Ctr. at Orange v. Guhl, 331 N.J. Super. 322, 329-30 (App. Div. 2000), and to claims that are essentially declaratory in nature. Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation, supra, 151 N.J. Super. at 238. It also extends to claims that are joined with claims within the jurisdiction of another court or division of this court. Pascucci v. Vagott, supra, 71 N.J. at 52-54.

> [Mutschler, supra, 337 N.J. Super. at 9].

Plaintiff's arguments which seek to avoid the application of this well-recognized principle are unpersuasive.

In our view, neither Rinaldo nor Burley stand for the proposition that, in circumstances like those before us, plaintiff may pursue a private cause of action against the

SHBC's claims administrators that is necessarily dependent upon the merits of his challenge to the SHBC's final agency action rejecting his claim for health care coverage. Notwithstanding plaintiff's energetic arguments to the contrary, plaintiff's complaint in the Law Division is squarely predicated upon the contention that defendants "wrongfully den[ied]" coverage for the health care claims advanced, and plaintiff in his complaint explicitly averred that "[t]his is an action for unpaid benefits and injunctive relief."[1]

In Rinaldo, for example, we explained that plaintiffs were entitled to pursue their claims against the holder of the wetlands permit and its contractors because the issuance of the

---

[1] We observe that plaintiff's complaint may be subject to other procedural and substantive infirmities. For example, plaintiff asserts that defendants "breached their contract" with him, yet it is clear that defendants were merely contractually bound to the SHBC - not to plaintiff. Further, while the CFA "encompass[es] the sale of insurance policies as goods and services that are marketed to consumers," "the payment of insurance benefits is not subject to the CFA." Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 265 (1997) (citing Nikiper v. Motor Club of Am., 232 N.J. Super. 393, 401 (App. Div.), certif. denied, 117 N.J. 139 (1989)); Pierzga v. Ohio Cas. Grp. of Ins. Cos., 208 N.J. Super. 40, 47 (App. Div.), certif. denied, 104 N.J. 399 (1986); see also In re Van Holt, 163 F.3d 161, 168 (3d Cir. 1998)("The mere denial of insurance benefits to which . . . plaintiffs believe[] they [are] entitled does not comprise an unconscionable commercial practice."). Also, it is apparent that plaintiff failed to allege a claim of breach of duty of good faith with the required specificity. See R. 4:5-8(a). However, because such issues were not presented to the motion court, we do not address them here. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973).

wetlands permit did not insulate the permittee from liability for damaging its neighbor's property in undertaking its work. Rinaldo, supra, 387 N.J. Super. at 400. Here, by contrast, plaintiff's claim is that he was damaged by the denial of benefits — a claim fully adjudicated on the administrative level, and for which plaintiff has abandoned his right to appellate review.

Plaintiff's focus at oral argument upon the errant claim of Magellan's physician advisor that a Caron physician had agreed that the son needed only outpatient treatment is unavailing. That claim was addressed and corrected at the second level appeal by Horizon's Member Appeals Subcommittee, and plaintiff's coverage was extended to March 4 — after the date of the alleged telephone conversation with the Caron doctor. Plaintiff thus challenged that claim on the administrative level, and succeeded.

Our conclusion in Burley, that a plaintiff must first pursue an administrative appeal from a denial of coverage under the program, before pursuing an action at law, and that the dismissal of a premature suit must be "without prejudice" to a later action at law is not authority for the proposition plaintiff advances here. Burley, supra, 251 N.J. Super. at 500. As noted, plaintiff's claims in the Law Division are dependent

upon the resolution of an issue contrary to the final agency action of the SHBC - an issue fully adjudicated on the administrative appeal before the SHBC - as to which plaintiff has abandoned his appeal. Accordingly, plaintiff's complaint in the Law Division must be dismissed for lack of jurisdiction. To hold otherwise would permit plaintiff to collaterally attack a State administrative determination in the Law Division. The Law Division is without jurisdiction to adjudicate such claims. R. 2:2-3(a).[2]

The remainder of plaintiff's arguments on appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Cf. R. 2:5-5(b)(authorizing the Appellate Division, but only in "exceptional instances," to order the record on appeal of a state agency decision to be supplemented by a specially-designated trial court judge).