NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0117-19T4

AMERICARE EMERGENCY
MEDICAL SERVICE, INC.,

     Plaintiff-Respondent,

v.

THE CITY OF ORANGE TOWNSHIP,
BELL MEDICAL TRANSPORTATION,
TOWNSHIP OF IRVINGTON, and
TOWNSHIP OF SOUTH ORANGE,

     Defendants,

and

STATE OF NEW JERSEY
DEPARTMENT OF HEALTH,
OFFICE OF EMERGENCY
MEDICAL SEVICES, JAMES
SWEENY, SCOTT PHELPS, and
ERIC HICKEN,

     Defendants-Appellants,

_____

Argued telephonically April 1, 2020 –
Decided May 27, 2020

Before Judges Whipple, Gooden Brown, and Mawla.[1]

_____

[1] Judge Mawla did not participate in oral argument.  He joins the opinion with counsel's consent.  R. 2:13-2(b).

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2397-19.

Stephen J. Slocum, Deputy Attorney General, argued the cause for appellants (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, of counsel; Deborah E. Shane-Held and Patrick Jhoo, Deputy Attorneys Generals, on the briefs).

Shay S. Deshpande argued the cause for respondent (Franzblau Dratch, PC, attorney; Shay S. Deshpande, of counsel and on the brief; Daniel A. Lebersfeld, on the brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

On leave granted, the New Jersey Department of Health (Department) Office of Emergency Medical Services (OEMS), appeals from a July 16, 2019 Law Division order lifting the summary suspension of plaintiff AmeriCare Emergency Medical Service, Inc.'s (AmeriCare), license to operate as an emergency medical service provider and permitting an action to proceed under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (CRA). Under the CRA, "the party alleging a claim must show a violation of a substantive right or that someone 'acting under color of law' interfered with or attempted to interfere with a substantive right." State v. Quaker Valley Farms, LLC, 235 N.J. 37, 64 (2018). Since AmeriCare did not make that showing, we reverse.

2

AmeriCare, an entity that provides emergency transportation services, is licensed to operate mobility assistance vehicles (MAV), basic life support vehicles (BLS), and specialty care transport unit vehicles (SCTU). AmeriCare operates six BLS/SCTU vehicles and one MAV vehicle. OEMS, through the Department, has the legislative authority through its rules and regulations to grant, renew, and revoke licenses to entities engaged in performing emergency medical transportation services. OEMS also has the authority to issue summary suspensions of licenses issued to entities that conduct such services.

In June 2018, OEMS conducted an audit of AmeriCare's overall compliance with applicable regulations as well as an inspection of the emergency vehicles under their operation. OEMS filed a summary suspension of AmeriCare's license to operate and initiated revocation proceedings asserting AmeriCare engaged in a variety of regulatory violations relating to specific vehicles and the company's overall operation such as the credentialing of employees, record keeping, and the maintenance and security of patient-related records. In February 2019, the summary suspension and proposed revocation was withdrawn without a formal enforcement consequence imposed.

On May 30, 2019, OEMS received a complaint that doors on an AmeriCare vehicle were falling off their hinges, oxygen cylinders were empty due to system leaks, and wheels were falling off an AmeriCare ambulance while

3

in use. The complainant informed OEMS that those same vehicles were responsible for providing emergency medical services for the City of Irvington and Village of South Orange. At the time of the initial complaint, one of AmeriCare's BLS/SCTU vehicles, Vehicle 5261, was deemed out of service by the Department for having an inoperable front emergency grill light, missing protective jackets, and a missing fire extinguisher inspection tag.

In response, on May 31, 2019, OEMS conducted an unannounced inspection on two of AmeriCare's BLS/SCTU vehicles, Vehicles 5256 and 5258. The inspectors found serious safety concerns and the vehicles were deemed out of service. Vehicle 5256 had expired vehicle credentials, a loose rear step, an unsecure oxygen retention system, a balding front tire, an improperly attached side door, a hole in the passenger seat making it pervious to blood borne pathogens, and a map light with exposed wires. OEMS also found similar violations with Vehicle 5258 including a balding front tire, unsecured portable oxygen, a missing front license plate, a hole in the arm rest of the front passenger seat making it pervious to blood borne pathogens, a dashboard radio which falls out while driving, and an unsanitary portable suction unit.

These violations prompted OEMS to conduct an unannounced audit of AmeriCare on June 3, 2019. The investigators claimed they visited AmeriCare's principal place of business, a location in Dumont, but found no AmeriCare

4

official.  The investigators visited Americare's location in Irvington, where they found Vehicle 5259, which they inspected and placed out of service after finding serious safety concerns.  After the inspection, OEMS scheduled a meeting with an AmeriCare employee, but the meeting did not take place because the employee never arrived.

On June 4, 2019, OEMS, unable to reach representatives of AmeriCare, placed AmeriCare's remaining vehicles out of service to ensure public health, safety and welfare.  OEMS also contacted the appropriate dispatch centers as well as both the City of Irvington and the Village of South Orange.  On June 5, 2019, South Orange Village terminated its contract with AmeriCare.

After learning OEMS was contacting AmeriCare's clients, Fabrizio Bivona, AmeriCare's founder and CEO, contacted OEMS and arranged for the re-inspection of its vehicles.  On June 10 and 12, 2019, additional inspections were performed and Vehicles 5261, 5256, and 5259 were placed back into service after inspection.  The remaining vehicles were not restored at that time. AmeriCare argues that OEMS refused to inspect and pass the remaining vehicles despite failing to identify any violations.  AmeriCare further asserts that an OEMS representative spoke with a city attorney for Orange Township noting that over fifty percent of AmeriCare's vehicles remained out of service.

5

Despite three of the vehicles being reinstated, on June 18, 2019, the Department summarily suspended AmeriCare's license to operate emergency medical transportation services. The suspension letter contained a detailed history of the inspection of AmeriCare's vehicles, as well as a description of the other violations OEMS found during the investigation.

Ultimately, the summary suspension forced AmeriCare to stop operating all vehicles and OEMS notified AmeriCare that it had the "right to apply to the Commissioner of the [Department] for emergency relief to contest this summary suspension," and that "failure to submit a request for a hearing within [thirty] days from the date of this Notice shall result in the continued summary suspension of your . . . provider licenses . . . ." AmeriCare asserts it did not receive the summary suspension letter until a week after the letter was finalized.

Rather than file for emergent relief, AmeriCare filed an order to show cause for injunctive relief and an amended complaint in lieu of prerogative writs in the Law Division seeking to add OEMS and Scott Phelps, Director of OEMS, Eric Hicken, Administrator of OEMS, and James Sweeney, Chief Investigator, as defendants in its prerogative writs complaint. AmeriCare was already involved in litigation which alleged public bidding violations against the City of Orange and Bell Medical Transportation (Bell). In its bid litigation against the City of Orange and Bell, AmeriCare alleged that in response to a request by the

6

City of Orange to submit sealed bids for a contract to perform emergency medical services, AmeriCare submitted the lowest bid but the contract was awarded to Bell. The City of Orange and AmeriCare were allegedly in settlement negotiations when, according to AmeriCare, OEMS investigator Sweeney began inspecting its vehicles and OEMS took two vehicles out of service. AmeriCare further asserted OEMS advised its clients that AmeriCare was out of business, which ultimately resulted in the loss of municipal contracts. AmeriCare asserts OEMS wrongfully notified its clients of AmeriCare's suspension before it notified AmeriCare and OEMS's actions were invalid and designed to interfere with its business in violation of its civil rights under the CRA and 42 U.S.C. § 1983.

On July 1, 2019, the Law Division judge heard oral argument on the order to show cause and motion for injunctive relief. The court found it had jurisdiction to issue the relief sought and ordered that the summary suspension be lifted to permit AmeriCare to operate the vehicles that were re-inspected and re-authorized by OEMS, provided they remained in compliance with the applicable legal standards. The court also ordered OEMS to re-inspect AmeriCare's remaining vehicles which remained out of service. The court rejected OEMS's argument that AmeriCare was required to exhaust its administrative remedies and on July 16, 2019, entered an order memorializing

7

its July 2, 2019 decision. OEMS sought a stay of the trial court's order on July 17, 2019, and the application was denied. On July 29, 2019, OEMS moved for leave to appeal and for a stay of the trial court's July 16 order, which we granted. This appeal followed.

I.

On appeal, OEMS asserts we should vacate the trial court's July 16 order for the following reasons: 1) plaintiff failed to exhaust its administrative remedies; 2) even if plaintiff were not required to exhaust its administrative remedies, the trial court lacked jurisdiction to consider plaintiff's claims because review of agency action lies with the Appellate Division; and 3) plaintiff's claims lack merit. At the outset, we first address whether the Law Division had subject matter jurisdiction to adjudicate AmeriCare's complaint. The determination of whether subject matter jurisdiction exists is a legal question, which we review de novo. Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012).

OEMS asserts the trial court erroneously concluded AmeriCare was not required to exhaust its administrative remedies and could pursue relief from OEMS's regulatory decisions in the Law Division. OEMS argues that no matter how AmeriCare "styled its claims" the substance of those claims are not civil rights violations but are substantive challenges to the summary suspension itself

8

and that the trial court lacks the expertise to consider the summary suspension as the OEMS's licensing function falls within its technical expertise.

The CRA provides, in pertinent part, a remedy against private and public defendants for a person who has

> been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . . .
>
> [N.J.S.A. 10:6-2(c).]

The CRA further provides that actions "may be filed in Superior Court. Upon application of any party, a jury trial shall be directed." N.J.S.A. 10:6-2(d). "[T]he CRA is facially silent about any other procedural requirement that a plaintiff must satisfy in order to bring a CRA cause of action." Owens v. Feigin, 194 N.J. 607, 611 (2008).

In Owens, 194 N.J. at 611-14, the Court examined the legislative history and the plain language of the CRA to determine whether the Legislature intended for the Tort Claim Act's (TCA), N.J.S.A. 59:1-1 to -12-3, notice-of-claim requirement to apply to CRA causes of action. There, Owens timely filed a notice-of-claims to public entities and employees that were named defendants

9

but did not file a notice-of-claim for one defendant, Feigin, the county medical examiner. Id. at 610. The Court held that the notice requirement did not apply to CRA claims as neither the plain language of the CRA nor its legislative history contain any indication that the Legislature intended the TCA's notice requirement to "serve as a prerequisite to a CRA cause of action." Id. at 613-14. In reaching this conclusion, the Court noted the "broad remedial purpose of the CRA" supports the conclusion that the Legislature did not condition "the rectifying of an infringement on an individual's vital constitutional rights," on the satisfaction of the notice requirement. Id. at 614.

The United States Supreme Court also recognized the need to analyze legislative intent in determining whether a procedural scheme, such as the exhaustion of administrative remedies, is a prerequisite to bringing a claim under a federal civil rights statute. In Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982), the Court held the exhaustion of state administrative remedies is not a prerequisite to bringing a 42 U.S.C. § 1983 claim. There, the Court recognized Congress intended the Civil Rights Act of 1871, the precursor to § 1983, to "'open the doors of the United States courts' to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights . . . and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary . . . ." Id. at 504.

10

(citations omitted). The Court also recognized that although the exhaustion requirement would further various policies such as lessening the burden on federal courts and enabling the state administrative agency, with expertise in the area, to enlighten the federal court's decision, these policy considerations alone cannot justify judicially imposed exhaustion unless the exhaustion is consistent with the legislative intent. Id. at 512-13.

Based on our review, we do not find the trial court erred in concluding that plaintiff was not required to exhaust its administrative remedies before bringing a claim under the CRA in the Law Division. Like the Court in Patsy, we decline to read into the CRA an exhaustion of remedies requirement as doing so would be inconsistent with legislative intent. See Tumpson v. Farina, 218 N.J. 450, 474 (2014) (noting the interpretation of 42 U.S.C. § 1983 claims may provide guidance in construing our CRA); Owens, 194 N.J. at 615 (noting the CRA serves a "broad remedial purpose.").

However, while the exhaustion requirement is not a prerequisite to bringing a CRA claim in the Law Division, we have also refused to allow plaintiffs to avoid the exhaustion of administrative remedies when their claims amount to nothing more than a collateral attack of a State administrative determination. In Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 432-34 (App. Div. 2013), the plaintiff, an insured former public employee, sued

11

the New Jersey Health Benefits Program and a medical provider after his son's treatment at a substance abuse facility was denied. Beaver appealed the decision and the matter was transferred to the Office of Administrative Law for an evidentiary hearing. Id. at 434-35. The Administrative Law Judge (ALJ) recommended denial of the claim and the State Health Benefits Commission (SHBC) adopted the ALJ's findings and conclusions. Id. at 435-36.

Beaver later filed a complaint in the Law Division alleging breach of contract, breach of fiduciary duty, unjust enrichment, and a violation of the New Jersey Consumer Fraud Act. Id. at 436. The trial judge dismissed those claims for lack of subject matter jurisdiction and plaintiff appealed. Id. at 437. On appeal, Beaver asserted his complaint did not "challenge the SHBC's final administrative action, but rather is a separate action at law alleging statutory and common law causes of action . . . ." Id. at 437. He contended the SHBC action was irrelevant to the asserted causes of action and the defendants argued that the language in Beaver's complaint illustrates that, regardless of the claims asserted, he was simply seeking coverage for his son's treatment, and that reversal of the SHBC's determination was essential to his complaint. Id. at 439.

We explained that an examination of the causes of action set forth in the complaint is pivotal to a determination of jurisdiction. Ibid. Affirming the dismissal, we said:

12

[P]laintiff has explicitly stated that his complaint is brought to recover "unpaid benefits" under the Program. Accordingly, to recover, plaintiff must necessarily secure a reversal of the SHBC final agency action upholding the denial of those same benefits. Plaintiff cannot avoid this obvious conclusion by cloaking his claims under the mantle of contract and tort.

. . . .

[S]tripped to their barest essentials, plaintiff's claims, sounding in tort and contract, amount to no more than a collateral challenge to the . . . SHBC final agency action upholding the limitation of coverage for plaintiff's health benefit claims. Indeed, absent an attack on that final agency action, plaintiff's tort and contract claims are patently without basis in fact or law.

. . . .

Accordingly, plaintiff's complaint in the Law Division must be dismissed for lack of jurisdiction. To hold otherwise would permit plaintiff to collaterally attack a State administrative determination in the Law Division.

[Id. at 441-44.]

In this case, jurisdiction hinges on whether AmeriCare has a colorable CRA claim and if so, the nature of the CRA claim. The Legislature adopted the CRA "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." Owens, 194 N.J. at 611. As noted above, the CRA is modeled after the federal Civil Rights Act, 42 U.S.C. § 1983, and

13

provides a vessel for "vindicating substantive rights and is not a source of rights itself." Gormley v. Wood-El, 218 N.J. 72, 98 (2014).

The elements of a substantive due process claim under the CRA are the same as the statute it was modeled after, 42 U.S.C. § 1983. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). The first step "is to identify the state actor, 'the person acting under the color of law,' that has caused the alleged deprivation." Id. at 114 (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996)). Next the party must "identify a right, privilege or immunity secured to the claimant" by the constitutions of the state and federal governments or by state and federal laws. Ibid. (internal quotations omitted) (citations omitted). Therefore, to bring a cause of action under the CRA, the second element requires a party to allege a specific constitutional violation. Our case law is clear that an individual may prevail on a claim under the CRA only when: (1) the plaintiff has actually been deprived of a right; or (2) one acting under color of law has threatened, intimidated, or coerced a person or attempted to do so, in such a way that it interferes with the person's exercise or enjoyment of his rights. Felicioni v. Admin. Office of Courts, 404 N.J. Super. 382, 400 (App. Div. 2008).

In its complaint, AmeriCare's first assertion is OEMS violated N.J.S.A. § 10:6-2 by, among other things, arranging for questionable inspections of its

14

ambulances, giving failing grades based on insignificant and non-material violations, failing to inspect all vehicles, refusing to perform re-inspections, and ultimately suspending AmeriCare despite three of its vehicles being placed back into service just days prior to the suspension. The very essence of these claims is a collateral attack on agency action.

Although not expressly stated in the complaint, even if AmeriCare alleged it was deprived of its right to an occupational license, such a deprivation does not rise to the level of a substantive due process violation. "[A]n occupational license is in the nature of a property right." Santaniello v. N.J. Dept't of Health & Sr. Servs., 416 N.J. Super. 445, 460 (App. Div. 2010) (citation and internal quotations omitted). However, "[t]here is no protectable property right in continuing or future [licensure] since any existing property interest in the [license] is extinguished upon its expiration." Id. at 459. Therefore, "constitutional due process protects against only the improper suspension or revocation of a license; it does not protect against a licensing board's summary refusal to reinstate a license that has been revoked." Id. at 460 (citation omitted). Accordingly, AmeriCare would only be able to challenge the procedural process, i.e. the improper suspension or revocation. Here, AmeriCare was entitled to emergency relief by the Commissioner of the Department for review of OEMS's period of suspension and was so advised. Since procedural due process claims

15

cannot be brought under the CRA,[2] plaintiff cannot proceed under this theory. AmeriCare was offered the process it was due.

## II.

AmeriCare's second assertion is the "Individual Defendants" further violated 42 U.S.C. § 1983 by making statements containing confidential and non-public information to municipal officials, which resulted in AmeriCare being denied contracts with certain municipalities and for existing contracts to be rescinded or terminated. The second assertion, in general terms, alleges the Department's unethical conduct is a violation of AmeriCare's "due process and civil rights."

We decline to offer an opinion on the record before us whether a cause of action based on these allegations has validity. We do recognize, however, the allegations inescapably require the fact-finder to determine the validity of OEMS's summary suspension, a role that falls under the exclusive province of the Department. To prove that OEMS unconstitutionally harmed its business, AmeriCare would be required to attack the agency's determination that it should no longer be licensed. Without the right to operate as a licensed entity, the above-referenced claims are rendered moot. Thus, as we stated in <u>Beaver</u>, 433

---

[2] The CRA was specifically amended to limit the legislation's scope to substantive due process.

16

N.J. Super. at 441, "to recover, plaintiff must necessarily secure a reversal of the

. . . agency['s] action."

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17