**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3115-18

IN THE MATTER OF BRANDI
L. HUNT, MOUNTAINVIEW
YOUTH CORRECTIONAL
FACILITY, DEPARTMENT OF
CORRECTIONS.

_____

Submitted February 8, 2021- Decided March 12, 2021

Before Judges Messano and Smith.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-3228.

The Anthony Pope Law Firm, P.C. attorneys for the appellant (Annette Verdesco, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Mountainview Correctional Facility, Department of Corrections (Melissa H. Raksa, Assistant Attorney General, of counsel; Alexis F. Fedorchak, Deputy Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Jonathan S. Sussman, on the statement in lieu of brief).

PER CURIAM

Brandi Hunt was a thirteen-year veteran Senior Corrections Officer (SCO) with the Department of Corrections (DOC) at the Mountainview Youth Correctional Facility. She was terminated from her employment after an administrative hearing for conduct unbecoming an employee, among other disciplinary charges. The Civil Service Commission upheld the termination. Hunt appealed.

I.

On December 15, 2017, DOC internal affairs received information from a confidential informant reporting Hunt was in an inappropriate relationship with inmate M.D. The informant stated that M.D. had attempted to terminate the relationship, but that Hunt continued to call him from a specific telephone number the informant was able to identify. Further investigation revealed there were several thousand completed and uncompleted telephone calls and text messages between Hunt and M.D.'s two telephone numbers. During the investigation, Hunt admitted to contacting M.D. outside of work via calls and text messages, and that the calls were personal.

Hunt also admitted she knew M.D.'s parole status when she first communicated with him and was aware of DOC policy prohibiting staff contact with parolees, but she failed to report the communications to the DOC. She

acknowledged she had received a copy of the DOC policy related to staff/inmate overfamiliarity. During the investigative process, Hunt eventually revealed that many of her calls to M.D.'s two phones were made to his girlfriend April,[1] not to him, because she had started a phone sex relationship with April.

DOC suspended Hunt with pay for multiple DOC policy violations, set forth below:

1. conduct unbecoming an employee; and

2. improper or unauthorized contact with an inmate; and

3. undue familiarity with inmates, parolees, their families, or friends; and

4. violation of administrative procedures and/or regulations involving safety and security; and

5. violation of a rule, regulation, policy, procedure, order, or administrative decision.

A departmental hearing on the preliminary notice of disciplinary action charges took place. The hearing officer recommended termination. On April 24, 2018, Hunt was served with a final notice of disciplinary action removing her from employment effective immediately.

---

[1] We use a fictional name, April, to protect the privacy of M.D.'s girlfriend.

Hunt appealed, and the hearing took place September 26-28, 2018, before an administrative law judge (ALJ). DOC witnesses included investigator Patrick Sesulka, and Major Michael White, a twenty-one-year employee with expertise in DOC policies and procedures. Hunt testified, as did her longtime girlfriend, Asha Jones, and her Mountainview supervisor, Jeffery Scott.

Major White testified that DOC policy prohibits corrections officers from contacting an inmate or parolee until one year after the inmate or parolee completes their court-imposed sentences. He further testified that a corrections officer may contact a parolee within the one-year period, but only with written permission of the DOC. Additionally, he stated that department policy prohibited relationships of any kind between a corrections officer and an inmate or parolee under the DOC's Standards of Professional Conduct: Staff Inmate Over Familiarity.

Hunt testified. She admitted to conducting a phone sex relationship with April. She was aware that April was M.D.'s girlfriend when she began the relationship, and that M.D. was a parolee. The phone sex relationship lasted through September and October 2017, and it ended when April demanded to meet Hunt in person and Hunt declined. After Hunt attempted to end the relationship, April became hostile and threatening. Even when she was

threatened by April, Hunt did not report those conversations to the DOC as required. Hunt testified that one reason she did not report the conversations was her concern about not revealing her sexual orientation to co-workers or inmates at her workplace, which she perceived to be hostile to lesbians. A second reason Hunt gave for not disclosing the relationship was her desire not to reveal it to her longtime girlfriend, Jones. Presumably to explain her lapse in judgment, Hunt testified to being overwhelmed, as she held a second job, cared for her sick and elderly parents, and visited an incarcerated brother once a month.

After an extensive hearing, the ALJ made credibility determinations and found the following salient facts:

1. Hunt admitted to numerous improper calls and texts with parolee M.D. and/or his girlfriend, including telephone sex with parolee M.D.'s girlfriend, April; and

2. Hunt's conduct was governed by the DOC's personnel policy; and

3. Hunt received training on the DOC's "undue familiarity" policy, which listed conversation with an inmate on a non-work-related issue as an example of "undue familiarity."

The ALJ balanced the mitigating factors Hunt offered at the hearing, including: her lack of disciplinary history, her fear of April's aggressive behavior after the

5

relationship ended, her desire to keep her sexual orientation private at work, and her efforts to hold down two jobs while supporting her elderly parents and incarcerated brother. The ALJ concluded Hunt's conduct outweighed the mitigating factors she presented. He found Hunt specifically violated numerous DOC regulations and policies, and was guilty of conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), and other sufficient causes, N.J.A.C. 4A:2-2.3 (12). The ALJ's initial decision recommended termination. On February 20, 2019, the Civil Service Commission (CSC) issued a final decision adopting the ALJ's findings and conclusions and affirmed Hunt's removal.

Hunt makes the following argument on appeal:

> The Civil Service Commission's Decision Dismissing Appellant's Appeal and Affirming the Administrative Law Judge's Decision Was Arbitrary and Capricious or Unreasonable and is Contrary to Law

II.

Our review of agency action is necessarily limited. We will not disturb an agency's judgment unless the court finds it to be "arbitrary, capricious, or unreasonable, or not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)); Karins v. Atl. City, 152 N.J. 532, 540 (1998). We do not substitute our judgment for the agency's. In re Carter, 191

6

N.J. 474, 483 (2007). This deferential review applies to disciplinary actions. In re Herrmann, 192 N.J. 19, 28 (2007).

In employee discipline proceedings, the agency need only "prove [its] case by a preponderance of credible evidence." Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 435 (App. Div. 2013) (citing Atkinson v. Parsekian, 37 N.J. 143, 149 (1962)). "[Where] substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, 109 N.J. 575, 587 (1998); Henry, 81 N.J. at 579-80). Additionally, a presumption of reasonableness attaches to the actions of administrative agencies. City of Newark v. Nat. Res. Council in Dep't of Env'tl Prot., 82 N.J. 530, 539-40 (1980). We defer to the expertise of agencies where substantial evidence supports the agency's determination. In re Stallworth, 208 N.J. at 194.

"An employee may be subject to discipline for [c]onduct unbecoming a public employee." N.J.A.C. 4A:2-2.3(a)(6). Conduct unbecoming refers to "any conduct which adversely affects the morale or efficiency of the bureau [or] which has a tendency to destroy public respect for municipal employees and

confidence in the operation of municipal services." Karins, 152 N.J. at 554 (quoting In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960)). "The need for proper control over the conduct of the inmates in a correctional facility and the part played by proper relationships between those who are required to maintain order and enforce discipline and the inmates cannot be doubted." Bowden v. Bayside State Prison, 268 N.J. Super 301, 305-06 (App. Div. 1993).

The CSC adopted the findings and conclusions of the ALJ in his thorough written opinion. There is sufficient credible evidence in the record to support the Commission's final disciplinary actions. Hunt admittedly engaged in an inappropriate relationship with the girlfriend of a parolee, in violation of several DOC policies. She placed herself, her co-workers, and her employer in jeopardy by exposing herself to potential retaliation at a DOC facility, where safety of the inmates and employees must remain paramount. Her conduct jeopardized order and discipline within the facility. Id. at 305-06.

We do "not substitute [our] own judgment for the agency's even though [we] might have reached a different result." Greenwood, 127 N.J. at 513. We see no basis under our standard of review to disturb the CSC's final decision, which carries a presumption of reasonableness. City of Newark, 82 N.J. at 539-40. We affirm, relying upon the Commission's independent evaluation of the

record, as well as its review and adoption of the ALJ's thorough initial decision. Any additional arguments raised by Hunt that were not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3115-18